567 F.2d 163
 Lois Hope SMALL and Veda May Poulson, also known as Gordon,
Plaintiffs-Appellees,
v.
Maurice F. KILEY, District Director, Immigration and
Naturalization Service, and Leonard P. Chapman,
Commissioner, Immigration and
Naturalization Service,
Defendants-Appellants.
 No. 668, Docket 76-6162.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 14, 1977.
Decided March 9, 1977.
 
 Richard P. Caro, Asst. U.S. Atty., Brooklyn, N.Y. (David G. Trager, U.S. Atty., and Bernard J. Fried, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for defendants-appellants.
 Leo Rosen, New York City (S. Bernard Schwarz, New York City, on the brief), for plaintiffs-appellees.
 Before LUMBARD and TIMBERS, Circuit Judges, and KNAPP, District Judge.*
 PER CURIAM:
 
 
 1
 Defendants, Maurice F. Kiley and Leonard P. Chapman, District Director and Commissioner, respectively, of the United States Immigration and Naturalization Service, appeal from a preliminary injunction entered August 13, 1976 in the Eastern District of New York, George C. Pratt, District Judge, preliminarily enjoining them from conducting certain deportation proceedings involving plaintiff Veda May Poulson. For the reasons below, we vacate the preliminary injunction.
 
 
 2
 Plaintiff Lois Hope Small entered the United States in 1968 as a permanent resident alien. She has been eligible to apply for naturalization since 1973. She did not do so, however, until January 1976, about three months before the instant action was commenced. Poulson, who allegedly is Small's mother, has remained in the United States unlawfully since 1964. On March 1, 1976 she was served with an Order to Show Cause why she should not be deported.
 
 
 3
 On April 23, 1976 Small and Poulson commenced the instant action in the Eastern District of New York. The action sought preliminarily to enjoin defendants from conducting deportation proceedings against Poulson until Small could be naturalized. The action also sought to compel defendants to process Small's application for naturalization.
 
 
 4
 The gravamen of the complaint was plaintiffs' allegation that, pursuant to a directive giving priority to enforcement of the immigration laws against aliens in this country illegally, personnel of the Immigration and Naturalization Service (INS) had been unlawfully "deployed" away from processing naturalization applications. The asserted delay in processing Small's naturalization application was claimed to have caused prejudice to Poulson in having to submit to deportation proceedings before her alleged daughter became a citizen. The essential purpose of plaintiffs' district court action was to prevent Poulson from being subjected to the administrative process until she could have the question of her deportability determined when she could claim to be an immediate relative of a United States citizen. See 8 U.S.C. §§ 1151(b), 1154(a) (1970).
 
 
 5
 On August 4, 1976 defendants moved to dismiss the complaint on several grounds, including lack of subject matter jurisdiction, lack of ripeness, failure to exhaust administrative remedies, and failure to state a claim upon which relief could be granted. On the same date plaintiffs moved for a preliminary injunction to enjoin the deportation proceedings. On August 13, after various procedural steps not here relevant, and in the absence of Judge Neaher to whom the case had been assigned, the motions were brought on to be heard before Judge Pratt. After a brief hearing Judge Pratt adjourned defendants' motion to dismiss the complaint until Judge Neaher's return; adjourned Small's motion to require that her naturalization proceedings be calendared; stayed the taking of depositions until defendants' motion to dismiss had been decided; and granted plaintiffs' motion for a preliminary injunction against further deportation proceedings until after the depositions had been completed. Judge Pratt's order of August 13, including the preliminary injunction, was made orally from the bench. More than two weeks later, on August 31, a written memorandum and order was entered confirming the August 13 order.
 
 
 6
 The district court made no findings, as required by long settled authority in this Circuit before a preliminary injunction may be entered, with respect to plaintiffs' likelihood of success on the merits or the prospect of irreparable harm should the preliminary injunction be denied. Nor did the court determine whether it had jurisdiction over the subject matter.[1]
 
 
 7
 Under such circumstances, an injunction should not have been entered. The requirement of Fed.R.Civ.P. 65(d) that "(e)very order granting an injunction . . . shall set forth the reasons for its issuance" is mandatory. Mayflower Industries v. Thor Corp., 182 F.2d 801 (3 Cir. 1950); 7 Moore's Federal Practice P 65.11 (2d ed. 1975). That requirement is for the benefit of both the reviewing court, cf. Schmidt v. Lessard, 414 U.S. 473, 477 (1974) (per curiam) (the "specificity" requirement of Rule 65(d)), and the party enjoined.
 
 
 8
 Plaintiffs invite us to hold that the district court made the requisite findings implicitly. We decline the invitation. If we were to affirm a preliminary injunction on the assumption that the requisite findings had been made, we would make a mockery of Rule 65(d). In the instant case defendants tersely remind us that even the government is entitled to know why it has been enjoined from enforcing the law. We agree.
 
 
 9
 For aught that appears in the record before us, there simply is no basis upon which the district court could have made the requisite findings either that plaintiffs were likely to succeed on the merits or that they would sustain irreparable harm absent injunctive relief. See Sonesta v. Wellington Associates, 483 F.2d 247, 250 (2 Cir. 1973); Imperial Chemical Industries Ltd. v. National Distillers & Chemical Corp., 354 F.2d 459, 461-62 (2 Cir. 1965). Plaintiffs' failure to exhaust their administrative remedies precludes either finding here. "Irreparable harm cannot be established by a mere reliance on the burden of submitting to agency hearings." Sears, Roebuck & Co. v. NLRB, 473 F.2d 91, 93 (D.C.Cir.1972), cert. denied, 415 U.S. 950 (1974). Poulson's deportation cannot be said to be imminent, in view of the protracted nature of deportation proceedings and the availability of relief even after entry of a final order of deportation.[2] The absence of irreparable harm renders inexcusable plaintiffs' failure to exhaust their administrative remedies, as well as the district court's interference with the administrative process. See Renegotiation Board v. Bannercraft Clothing Co., 415 U.S. 1, 24 (1974); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 51-52 (1938); Sears, Roebuck & Co. v. NLRB, supra. Moreover, plaintiffs' likelihood of success on the merits is doubtful at best in view of the strong showing that must be made before a court can be said to have exercised sound judicial discretion in enjoining administrative proceedings.[3]
 
 
 10
 "It is true that ordinarily the decree of a District Court granting or denying a preliminary injunction will not be disturbed on appeal. But that rule of practice has no application where, as here, there (may have been) an insuperable obstacle to the maintenance of the suit in point of jurisdiction and where it clearly appears that the decree was the result of an improvident exercise of judicial discretion." Myers v. Bethlehem Shipbuilding Corp., supra, 303 U.S. at 52.
 
 
 11
 The preliminary injunction is vacated. The mandate shall issue forthwith.
 
 
 12
 Vacated.
 
 
 
 *
 Hon. Whitman Knapp, United States District Judge, Southern District of New York, sitting by designation
 
 
 [1]
 The only jurisdictional grounds alleged by plaintiffs in their complaint are the Declaratory Judgment Act, 28 U.S.C. § 2201 (1970), and the Administrative Procedure Act (APA), 5 U.S.C. § 706 (1970). Neither provides an independent basis for federal jurisdiction. Califano v. Sanders, 430 U.S. 99 (1977) (APA); Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950) (Declaratory Judgment Act). On appeal plaintiffs assert several other jurisdictional bases, including 28 U.S.C. §§ 1331(a), 1346(a)(2), 1361 (1970) and 8 U.S.C. § 1329 (1970)
 Since we vacate the injunction for failure to comply with Rule 65(d), we do not reach the jurisdictional question. Suffice it to note here that the district court should not have granted a preliminary injunction without first having determined whether it had jurisdiction to do so.
 
 
 [2]
 Poulson could have, but has not, moved before the INS for a stay of proceedings pending determination of Small's naturalization application. She could admit her deportability and apply for the privilege of voluntary departure. 8 U.S.C. § 1252(b) (1970); 8 C.F.R. § 242.5 (1976). If found eligible for voluntary departure she could apply for an extension of time within which to depart. 8 C.F.R. § 244.2 (1976). If she chose to have her deportability adjudicated, formal adjudicatory hearings would be held. 8 U.S.C. § 1252(b); 8 C.F.R. pt. 242 (1976). If found deportable she could file an administrative appeal, 8 C.F.R. §§ 3.1-3.8, 242.21 (1976), and then a petition for judicial review. 8 U.S.C. § 1105a(a) (1976). She could apply for suspension of deportation. 8 U.S.C. § 1254 (1970). If Small became a citizen before Poulson's deportation, Poulson could make a motion to reopen or for reconsideration. 8 C.F.R. §§ 3.2, 103.5, 242.22 (1976). If she were deported, Poulson could apply for readmission upon consent of the Attorney General. 8 U.S.C. § 1182(a)(17) (1970)
 "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d 921, 925 (D.C.Cir.1958). That is especially true where, as here, the court is asked to enjoin the very proceedings from which the "other corrective relief" might issue.
 
 
 [3]
 Success on the merits is unlikely even apart from plaintiffs' failure to utilize administrative procedures before seeking relief from the courts. Small complained of delay only three months after having filed her naturalization application. An INS official represented to the court, and asked it to take judicial notice, that in 1975 approximately 20,000 persons were naturalized in the Eastern District of New York alone. This was a substantial increase over prior years. The INS states that public records in the Eastern District of New York indicate that 19,059 persons were naturalized in 1975, as compared with 14,037 and 9,798 in 1974 and 1973, respectively. There also is a serious question whether a priority directive such as the one alleged to be causing the delay here would be subject to judicial review at all, absent a clear statutory violation