Lyonel **DOR**, Petitioner,

v.

**DISTRICT DIRECTOR, IMMIGRATION AND NATURALIZATION SERVICE, NEW YORK DISTRICT, Respondent.**

**No. 88 CIV 5822 (KC).**

United States District Court,
S.D. New York.

Sept. 29, 1988.

Mark Nerenberg, Galef & Jacobs, New York City, for petitioner.

Noel Ferris, Asst. U.S. Atty., New York City, for respondent.

## OPINION AND ORDER

CONBOY, District Judge.

Petitioner, who is presently committed to the custody of the Immigration and Naturalization Service ("INS"), seeks a writ of habeas corpus, a mandatory preliminary injunction, and other relief. He is being de-tained pursuant to § 242 of the Immigration and Nationality Act of 1952, as amended (the "Act"), 8 U.S.C. § 1252, as an alien subject to deportation under § 241(a)(1) of the Act, 8 U.S.C. § 1251(a)(1), which provides for the deportation of aliens who were excludable at the time of their entry into the United States.

On December 8, 1982, INS caused an arrest warrant for the Petitioner to be lodged at a New York State correctional facility where he was serving a sentence on a first degree manslaughter conviction. The warrant was predicated upon a charge that Petitioner had entered the country without valid entry documents. After completing six and one half years of a five to fifteen year sentence, Petitioner was released by New York State and taken into immediate custody by the INS.

A deportation hearing was held on March 12, 1985 before Immigration Judge Patricia Rohan, who concluded that Petitioner was deportable on the grounds asserted. Petitioner conceded his deportability, and applied for asylum and a stay of deportation, both of which were denied by Judge Rohan on April 30, 1985 in an order which directed that Petitioner be deported to Haiti. The Judge considered the role Petitioner played in the brutal and premeditated slaying of his aunt, and concluded that he is "a danger to the community of the United States." *See* 8 U.S.C. § 1253(h)(2)(B).

The Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal of this order on August 20, 1985, which became final on December 31, 1985 when Petitioner failed to perfect a petition for review. Petitioner's motion to reopen his case was denied by the BIA on July 13, 1986. Dor's petition for full review was heard by the United States Court of Appeals for the Second Circuit, and on December 24, 1986 that Court affirmed the order of the BIA. Noting that at oral argument counsel for Dor had suggested that Petitioner's recent marriage to a United States citizen might qualify him for a waiver of deportation, the Court stayed issuance of its mandate for 21 days after entry of its order. Petitioner's subsequent motion for

an indefinite stay of the issuance of its mandate was granted by the Court of Appeals shortly thereafter, on January 20, 1987. The stay was sought and granted in order to afford Petitioner time to pursue his application for relief from deportation by adjustment of status to lawful permanent residence under Section 202 of the Immigration Reform and Control Act of 1986 ("IRCA").

Petitioner filed his adjustment application with INS on January 14, 1987. After many months of written and personal communications between Petitioner's counsel and INS, Dor's application for Cuban–Haitian adjustment of status under § 202(a)(3) of IRCA was denied on December 7, 1987. The basis of INS's action was its conclusion that Congress excluded from the benefits of IRCA those aliens who come within the scope of § 243(h)(2) of the Act. *See*, 8 U.S.C. § 1182(h)(2); 8 U.S.C.A. § 1255a note following (West Supp.1988). Petitioner filed a timely appeal of this denial.

On February 22, 1988, Petitioner's counsel wrote to the District Director and demanded a hearing on the status adjustment application. It is not clear whether this was intended as a supplement to the record on appeal, or an argument to reconsider the entire matter de novo. As late as June 10 and 27, 1988 counsel was still pressing the District Director by letter to grant Dor a hearing de novo.

On June 1, 1988, a Kings County Supreme Court Justice denied Dor's motion to vacate his felony conviction. His counsel on July 5, 1988 filed a motion before the Appellate Division for a certificate granting leave to appeal that denial. That motion is pending. On July 19, 1988, Petitioner was officially advised by the Executive Clemency Bureau speaking on behalf of the Governor, that "there was no realistic possibility that [he] would receive executive clemency on any grounds." *See* Petitioner's brief herein, at 31. On the late Friday afternoon of August 19, 1988, Petitioner initiated this action, seeking, *inter alia*, his immediate release to attend the wedding of his sister-in-law in Pennsylvania the following day. This Court, sitting in Part I,

denied the application for a temporary restraining order on the ground that no notice of the application and hearing had been given to the Government. *See*, Endorsement, Order to Show Cause, *Dor v. Director*, 88 Civ. 5822. No decision has as yet been rendered by the Administrative Appeals Unit of INS on the pending appeal of the District Director's decision denying Petitioner' application for status adjustment under IRCA.

■ Petitioner complains that, because the statutory six month period requiring deportation by the Attorney General following a valid, final deportation order has elapsed without his deportation, he is being detained unlawfully. This is an odd and perverse argument, since the Attorney General is constrained from carrying out Petitioner's deportation because of the stay obtained by Petitioner from the Court of Appeals.

In a case that is in this context highly relevant, Judge Kaufman observed that "Congress clearly intended that the Attorney General have six *unhampered* months within which to effect deportation." *United States ex rel. Cefalu v. Shaughnessy*, 117 F.Supp. 473, 474 (S.D.N.Y.), *aff'd on opinion below*, 209 F.2d 959 (2d Cir.1954) (emphasis added). Petitioner's attempts to distinguish this case are not persuasive. *See also, Doherty v. Meese*, 808 F.2d 938, 941 (2d Cir.1986).

■ Petitioner further argues that his custody is unlawful because he is likely to achieve legal residence in the United States as a consequence of his application for Cuban–Haitian adjustment pursuant to IRCA. On the basis of the record before the Court, this position is plainly not tenable. The Attorney General has been prohibited by the Congress from granting Cuban–Haitian adjustment status to any alien who "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." Section 243(h)(2)(B) of the Act, 8 U.S.C. § 1253(h)(2)(B). Petitioner appears to be such an alien. Immigration Judge Rohan made this explicit finding in the deportation proceedings, it was confirmed

by the BIA, was never appealed by Petitioner to the Circuit Court of Appeals, and is therefore, at this point, incontrovertible.

Petitioner, recognizing this fact, argues that it is not relevant on the question of his eligibility for adjustment status. He argues that the finding of the immigration judge in connection with deportability cannot, under the statute, be germane, much less decisive, with respect to the statutory exclusion written by Congress into the law establishing Cuban–Haitian adjustment eligibility. A reading of the statute, however, compels an opposite conclusion: Congress plainly decided to ban certain otherwise eligible Cubans and Haitians from adjustment benefits because of their criminal histories, and decided to define this class through explicit reference to § 243(h)(2). Accordingly, Petitioner's likelihood of ultimately reversing INS's rejection of his application for adjustment status is, to say the least, remote.

█ In any case, it is a central principle of law that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Meyers v. Bethelem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938); *see also Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 20–24, 94 S.Ct. 1028, 1038–41, 39 L.Ed.2d 123 (1974); *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969); *County of Rockland v. N.R.C.*, 709 F.2d 766, 774 (2d Cir.), *cert. denied*, 464 U.S. 993, 104 S.Ct. 485, 78 L.Ed.2d 681 (1983); *Marshall v. Northwest Orient Airlines*, 574 F.2d 119, 122 (2d Cir.1978); *Brown v. General Services Administration*, 507 F.2d 1300, 1307–08 (2d Cir.1974), *aff'd*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed. 2d 402 (1976).

The doctrine of exhaustion of administrative remedies has as a rationalizing principle "the avoidance of premature interruption of the administrative process." *McKart v. United States*, 395 U.S. at 193–94, 89 S.Ct. at 1662–63. In emphasizing this institutional value, the Supreme Court, observed:

The agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based.... And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages.

*Id.* at 193–94, 89 S.Ct. at 1662–63.

As noted, Petitioner has a pending appeal of INS's denial of adjustment status under IRCA. He argues that he was denied a "hearing" guaranteed by the regulations. The Government insists that the only relevant regulation speaks of an "interview." 8 CFR § 245.9. It is not disputed however, that this issue has not been resolved in the first instance, in the administrative appellate body, the Administrative Appeals Unit, with jurisdiction for reviewing decisions of INS under IRCA.

█ Deference must be given to the administrative processes created by Congress to address in the first instance disputes arising under statutes it has enacted. *Fairchild, Arabatzis and Smith Inc. v. Sackheim*, 451 F.Supp. 1181, 1184 (S.D.N.Y.1978). Only by allowing, generally, unfettered resolution of controversies along organic, systematic lines in such administrative tribunals will a body of specialized knowledge and precedent develop to more soundly guide the reviewing courts in their ultimate supervisory responsibilities. The more complete and comprehensive factual records that completed administrative processes provide are indispensable to the interests of both justice and judicial economy. *See, e.g., Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975).

Most to the point is *Small v. Kiley*, 567 F.2d 163, 164 (2d Cir.1977), where the Court of Appeals noted, in an immigration case involving aliens attacking deportation proceedings at the INS, that failure to exhaust administrative remedies may preclude a finding either of irreparable harm or likelihood of succeeding on the merits.

The Court further found the District Court's interference with the administrative process of INS to be "inexcusable". *Id.* See also, the well reasoned opinion of Judge Keenan in *Lindo v. INS,* 596 F.Supp. 1380, 1382 (S.D.N.Y.1985).

On the basis of the record herein, the Court concludes that Petitioner has not made the requisite showing of irreparable harm or likelihood of prevailing on the merits.

█ Finally, the Court declines to find, under all the circumstances of the case, and specifically in the absence of a likelihood of Petitioner prevailing on the merits, that the District Director's decision to hold Petitioner without bond was arbitrary and capricious. *See U.S. ex rel. Nukk v. District Director,* 205 F.2d 242, 244 (2d Cir. 1953). The Court notes that Petitioner has been convicted of an especially brutal crime, the killing of his aunt, and no proof has established in any court of record that she, the victim, was the monster Petitioner makes her out to have been. Indeed, the District Attorney who prosecuted him, the Courts who judged him, and the Governor who possesses the clemency power to forgive him have heard all this, and not been moved. The heavy burden of establishing an abuse of discretion by the Director has manifestly not been carried by Petitioner. *See Carlson v. Landon,* 342 U.S. 524, 540–41, 72 S.Ct. 525, 534–35, 96 L.Ed. 547 (1952).

Accordingly, the application for a preliminary injunction is denied, and the petition for a writ of habeas corpus is dismissed.

SO ORDERED.