**Lyonel DOR, Petitioner–Appellant,**

v.

**DISTRICT DIRECTOR, IMMIGRATION AND NATURALIZATION SERVICE, Respondent–Appellee.**

**No. 937, Docket 88–6270.**

United States Court of Appeals, Second Circuit.

Submitted March 30, 1989.

Decided Dec. 8, 1989.

Mark Eli Nerenberg (Galef & Jacobs, New York City), for petitioner-appellant.

Noel Anne Ferris, Sp. Asst. U.S. Atty., New York City (Benito Romano, U.S. Atty., S.D.N.Y., Harriet L. Goldberg, Asst. U.S. Atty., of counsel), for respondent-appellee.

Before FEINBERG, PIERCE, and BROWN *, Circuit Judges.

JOHN R. BROWN, Senior Circuit Judge:

Lyonel Dor appeals a district court decision denying his application for a prelimi-

---

* Hon. John R. Brown, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

nary injunction and dismissing his petition for a writ of habeas corpus. Dor, a Haitian, was ordered deported in 1985 after serving a prison sentence for manslaughter. A final order of deportation was stayed by this Court in 1987, however, so that the Immigration and Naturalization Service (INS) could determine whether Dor was entitled to relief under a recently passed immigration law. We reject Dor's arguments that his continued detention (i) is without rational basis, (ii) extends beyond an INS six-month detention limitation, and (iii) violates due process. Furthermore, we find that the terms of our stay have been satisfied, i.e., that Dor's application for adjustment of status under the new immigration law has been sufficiently adjudicated by the INS. Accordingly, we affirm the district court's ruling and we vacate our earlier stay.

### From Haiti to INS Detention

Dor, a citizen of Haiti, entered the United States at the age of 12 without valid entry documents in 1972.[1] Six years later he was convicted of first degree manslaughter for participating in the murder of his aunt. Dor served 6½ years in prison and then was released into the custody of the INS on June 20, 1984. He remains in INS custody today, more than 5 years after completing his sentence.

On December 8, 1982 the INS instituted deportation proceedings against Dor on the ground that he had entered the United States without valid entry documents. Having conceded that he indeed illegally entered the United States, Dor applied for

---

1. An appendix following this opinion delineates the procedural history of Dor's unusually complex and protracted case. To clarify, we will parenthetically refer throughout the text to the date and "event number" of significant events (see appendix).

2. Section 202(a) of IRCA provides, in relevant part:
 (a) [An alien's] status * * * may be adjusted by the Attorney General, in the Attorney General's discretion and under such regulations as the Attorney General may prescribe, to that of an alien lawfully admitted for permanent residence if * * * (3) [the alien] is not an alien described in § 243(h)(2) of [the INA]. See *Immigration Reform and Control Act of*

asylum and a withholding of deportation. An Immigration Judge on April 30, 1985 denied his request for asylum and a withholding of deportation on the grounds that Dor is "a danger to the community of the United States" given the role he played in the slaying of his aunt, and ordered his deportation (event 3). *See* Immigration and Nationality Act (INA), § 243(h)(2)(B), 8 U.S.C. § 1253(h)(2)(B) (1952); 8 C.F.R. § 208.8(f) (1988). Dor unsuccessfully appealed that decision to the Board of Immigration Appeals (BIA) (event 4). In its dismissal order, the BIA determined that Dor was eligible for neither a withholding of deportation nor asylum due to his conviction for first degree manslaughter. Subsequently the BIA also denied Dor's motion to reconsider and to reopen the deportation hearing (event 7; 7/3/86). Dor became subject to a final order of deportation on December 31, 1985.

Having exhausted his administrative remedies, Dor sought judicial review of the deportation order resulting in a stay of the order. 8 U.S.C. § 1105a(a)(3). In December 1986 this Court affirmed the order of deportation, (event 8; 12/24/86) but then stayed the issuance of its mandate in response to the suggestion that under the then-recently promulgated Immigration Reform and Control Act of 1986 (IRCA), Pub.L. 99–603, Dor as a Haitian might qualify for an adjustment of status and thus avoid deportation by attaining the status of lawfully admitted permanent resident (event 15; 1/20/87).[2] On January 20, 1987 the stay of mandate was modified by extending it from 21 days to "until such

---

*1986* (IRCA) P.L. 99–603, 100 Stat. 3359, 3404, § 202. *See* note following 8 U.S.C.A. § 1255a (West 1988).

Section 202 of IRCA, which is devoted solely to Cuban–Haitian entrants, is discussed in a House Report attached to the bill: "Section 202 of the Committee bill would allow Cuban–Haitian Entrants * * * to apply for lawful permanent resident status if they have resided continuously in the United States since January 1, 1982 and *are not excludable on criminal or national security grounds.*" H.R.Rep. No. 682(I), 99th Cong., 2d Sess. 76, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5649, 5680 (our emphasis).

time as the Immigration and Naturalization Service adjudicates the applications for relief from deportation by adjustment of status to lawful permanent resident status under [IRCA § 202]." (event 15)

Nearly three years have elapsed since this Court stayed Dor's deportation.[3] On January 15, 1987 Dor filed his application for adjustment of status with the District Director of INS (event 14). The District Director rejected Dor's application for adjustment on the grounds that he was statutorily ineligible (event 17; 1/29/87). The Administrative Appeals Unit (AAU) then advised that Dor "may be eligible to file an application before the District Director (event 19; 10/16/87)." Thereupon, on December 7, 1987, the District Director denied the application without a hearing (event 20). The District Director concluded that Dor was not eligible for adjustment under IRCA § 202(a)(3) because his manslaughter conviction made him an alien who had "been convicted by a final judgment of a particularly serious crime," under § 243(h)(2)(B) of the INA. Dor filed a notice of appeal to the AAU (event 21; 12/28/87), and requested the District Director for a hearing. Before the AAU granted an appeal, the District Director granted Dor a hearing, but again ruled against Dor's application (event 22; 1/23/89).

### It Ain't Over Til It's Over

Dor has gone back and forth between the District Director and the AAU in his quest for adjustment. Throughout these legal maneuvers, this Court's stay of mandate alone has kept Dor from being deported. In August 1988 Dor filed a petition in the district court for habeas corpus and mandatory and injunctive relief pursuant to 8 U.S.C. § 1329 (event 31). Specifically Dor seeks release from INS custody while his quest for adjustment proceeds at a snail's pace. At the time the district court denied Dor's application for a preliminary injunction and dismissed the petition for a writ of habeas corpus, 697 F.Supp. 694 (S.D.N.Y. 1988) (event 32; 9/29/88), the January, 1989 decision of the District Director had not issued.

Today as we review the district court's denial of habeas corpus relief, the AAU has affirmed (event 24; 6/12/89) the latest decision of the District Director (event 22; 1/23/89), finding once again that Dor does not have grounds for attaining readjustment under IRCA.[4] On August 4, 1989 Dor filed a motion pursuant to 8 C.F.R. § 103.5(a) (1989) seeking AAU reconsideration of that AAU decision (event 25). The AAU denied this motion for reconsideration on September 18, 1989 (event 26), holding that it's previous decision (event 24) thoroughly reviewed the issues and arguments presented in the appeal and reiterated on motion. Meanwhile, on October 11, 1989, the BIA heard oral argument on Dor's motion to reopen his deportation proceedings (event 10).[5] This most recent motion to

---

**3.** Because our earlier stay involved matters literally not part of the record in this case, the Court on May 25th sent a letter to counsel requesting the Court be kept informed of developments in the case pending in the INS administrative process. The purpose of our request was to be assured that the Court in its continuous appraisal of its earlier stay have accurate information and that further administrative actions in the INS are handled expeditiously to avoid further unnecessary delay.

**4.** The AAU decision was rendered on June 12, 1989. Dor moved to reopen the proceeding given perceived errors in the AAU decision. In response, AAU on June 23, 1989 modified its June 12th opinion. The modifications, however, did not alter the affirmance of the District Director's denial of adjustment.

**5.** Dor's motion to reopen his deportation proceedings was made pursuant to 8 C.F.R. §§ 3.2 and 3.8(a) (1989). These regulations disallow reopening "unless it appears to the BIA that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 3.2 (1989).

Dor's motion to reopen alleged two new material facts. First, he claimed that the enactment of IRCA, (especially § 202), justified a fresh look at his deportation order, in light of the remedial purposes of that statute. Second, he alleged that the District Director/AAU improperly relied upon a prior finding of the Immigration Judge in making a critical determination about his application for adjustment of status. Neither of these arguments persuaded the BIA to reopen the deportation proceedings (event 11).

reopen the deportation proceedings has also been denied (event 11; 11/2/89).

### I. Issues on Appeal

We are presented initially with the question of whether the district court erred in dismissing Dor's petition for a writ for habeas corpus and request for injunctive relief. We wholeheartedly embrace the district court's conclusions that Dor's continued detention by the INS is legal. We reject Dor's arguments that (i) the detention without bond was without rational basis; (ii) the INS' failure to deport him within six months of the entry of the final deportation order precludes his further detention; and (iii) his extended detention violates due process.

### (i) Rational Basis?

The Haitian–Cuban Adjustment provision of IRCA, § 202(a), excludes from its coverage those aliens described in the earlier immigration statute, INA § 243(h), 8 U.S.C. § 1253(h).[6] For our purposes, the pertinent subsection of § 243(h) is 243(h)(2)(B), which states that a withholding of deportation shall not be granted when "the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." INA § 243(h)(2)(B), 8 U.S.C. § 1253(h)(2)(B). As the district court pointed out, the Immigration Judge has already made an unambiguous finding in the deportation proceedings (event 3; 4/30/85), and

this has been confirmed by the BIA (event 4; 8/20/85), that appellant Dor is within those class of persons defined by § 243(h)(2)(B) of the Act, 8 U.S.C. § 1253(h)(2)(B).[7]

■ Dor makes several arguments to challenge the effect of this characterization by the immigration authorities. None of these arguments are persuasive. First, Dor claims that this Court has already determined that his homicide conviction is insufficient to show that he is "dangerous" under INA 243(h)(2), 8 U.S.C. § 1253(h)(2). Dor bases this claim solely on our earlier rejection (event 18; 2/9/87) of the Government's motion to vacate the stay of the mandate (event 16; 1/28/87). But in rejecting the Government's motion to vacate the stay, we neither intended nor intimated a particular substantive ruling, explicit or implied, regarding the merits of either party's claim. Our stay of the mandate was designed simply to allow Dor the ability to maintain administrative review in the INS in light of the passage of IRCA. Since Dor is a Haitian, and IRCA contains a special provision for Haitians, (the Cuban–Haitian Adjustment provision, § 202), we merely considered the obvious possibility that Dor's alien status might be adjusted pursuant to that Act. However, well-established doctrine prevented our judicial interference in administrative decision-making at that incomplete stage of the process.[8]

■ Second, Dor contends that the Immigration Judge and the BIA have no juris-

---

6. See note 2, *supra*.

7. The full text of INA § 243(h), 8 U.S.C. § 1253(h) provides as follows:
 (h)(1) The Attorney General shall not deport or return any alien (other than an alien described in § 241(a)(19) of this title) to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.
 (h)(2) paragraph (1) shall not apply to any alien if the Attorney General determines that—
 (A) the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion;
 (B) the alien, having been convicted by a final judgment of a particularly serious crime,

constitutes a danger to the community of the United States;
 (C) there are serious reasons for considering that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States; or
 (D) there are reasonable grounds for regarding the alien as a danger to the security of the United States.

8. *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938); *see also Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 20–24, 94 S.Ct. 1028, 1038–41, 39 L.Ed.2d 123 (1974); *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969); *County of Rockland v. N.R.C.,* 709 F.2d 766, 774 (2d Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 485, 78 L.Ed.2d 681 (1983); *Marshall v. Northwest Orient Air-*

diction to determine his eligibility under IRCA because the act requires the *Attorney General* to make the status eligibility determination.[9] We agree. The proper authority to decide Dor's adjustment application is the Attorney General, and he has delegated that authority, by regulation, to the District Director. 8 C.F.R. § 245.6 (1989). And as we observed, *supra,* Dor has been pursuing adjustment of status before the District Director and, on appeal, before the AAU. However, merely because the District Director and the AAU have exclusive jurisdiction over Dor's adjustment application does not prevent them from relying on the pre-IRCA interpretation by the Immigration Judge and the BIA that he was not entitled to a withholding of deportation or a grant of asylum under § 243(h)(2)(B) and 8 C.F.R. § 208.8(f). *See* note 7, *supra.* The issue was directly and necessarily involved. The district court was entitled to determine this was a rational decision.

### (ii) Six Month Deadline

■ Dor next argues that § 242(c) of INA, 8 U.S.C. § 1252(c), limits the Attorney General to a six month detention period, and since Dor has been held much longer than six months, his release is required.[10] But Dor misinterprets the language of the statute and ignores prior decisions of this Court. First, the statute clearly states that the commencement date for the six month period is the date of the *final order of a court,* where judicial review is sought. But the final order of this Court has not been entered since Dor successfully pursued, and obtained, a stay of the mandate (event 15; 1/20/87). As the district court found, this case is governed by *United States ex rel. Cefalu v. Shaughnessy,* 117 F.Supp. 473, 474 (S.D.N.Y.), *aff'd on opinion below,* 209 F.2d 959 (2d Cir.1954). When the actions of the alien prevent the INS from effecting deportation, delaying tactics do not support the alien's claim for release from deportation. *See also Doherty v. Meese,* 808 F.2d 938, 941 (2d Cir.1986); *United States ex rel. Lam Tuk Man v. Esperdy,* 280 F.Supp. 303, 304 (S.D.N.Y. 1967). Dor contends that the government's formulation of INA § 242(c), 8 U.S.C. § 1252(c) could lead to the detention of an alien *in perpetuity,* if the INS refrained

lines, 574 F.2d 119, 122 (2d Cir.1978); *Brown v. General Services Administration,* 507 F.2d 1300, 1307–08 (2d Cir.1974), *aff'd,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

**9.** The principal Justice Department units with adjudicative roles in immigration are: 1) the Executive Office for Immigration Review, (which is composed of the Immigration Judges, and as appellate authority, the BIA); and 2) the INS (which is composed of District Directors, and as appellate authority, the AAU). See Legomsky, *Forum Choices for the Review of Agency Adjudication: A Study of the Immigration Process,* 71 Iowa L.Rev. 1297, 1308 (1986). To avoid confusion, it should be stressed that the BIA and the Immigration Judges are no longer (since 1983) formally part of the INS.

The Attorney General sits atop these two divisions. The allocation of adjudicatory responsibility between the Executive Office for Immigration Review and the INS does not lend itself to simple explanation or summary. The Immigration Judges issue both exclusion and deportation orders, among other things. INA §§ 236(a), 242(b), 8 U.S.C. §§ 1226(a), 1252(b) (1982). District Directors decide visa petitions, (8 C.F.R. § 204.1), adjustment of status applications, (§ 245.2, § 245.6), extensions of stays for nonimmigrants, (§ 214.1–2, etc.)

The AAU consists of five "appellate examiners" and the Chief of the Unit, none of whom is an attorney. Each case is considered *de novo* by one of the appellate examiners and reviewed by the Chief, whose decision prevails in the event of a conflict. Decisions of the AAU are published very infrequently.

The BIA has five members, all attorneys, and all of whom participate in every case. *See* 8 C.F.R. § 3.1(a)(1), and Legomsky, *Forum Choices, supra.* They are assisted by a staff of attorney examiners. The BIA selects, for publication, precedent decisions that will bind the INS and the Immigration Judges. 8 C.F.R. § 3.1(g).

**10.** Section 242(c) provides: "When a final order of deportation under administrative processes is made against any alien, the Attorney General shall have a period of six months from the date of such order or, if judicial review is had, then from the date of the final order of the court, within which to effect the alien's departure from the United States, during which period at the Attorney General's discretion, the alien may be detained, or released on bond in an amount and containing such conditions as the Attorney General may prescribe. * * *" 8 U.S.C. § 1252(c).

from adjudicating a pending application for administrative relief for whose explicit adjudication a Court of Appeals has ordered deportation stayed. But this argument assumes the absence of facts critical to the case at hand, *i.e.*, that Dor is largely responsible for the very delay of deportation of which he complains.

### (iii) Due Process

Dor's due process claims fail for the same reason. Dor stresses this Court's decision in *United States v. Gonzales Claudio*, 806 F.2d 334 (2d Cir.1986), which held that where the Government, "even if not deserving of blame, bears a responsibility for a portion of the delay significant enough to add considerable weight to the [petitioner's] claim that the duration of detention has exceeded constitutional limits," lengthy detention pending resolution of a criminal charge "would exceed even the flexible standards of due process." *Id.*, at 343.

■ We find *Gonzales Claudio* not controlling. First, a deportation proceeding is not a criminal proceeding (*Gonzales Claudio*) and the full trappings of legal protections that are accorded to criminal defendants are not necessarily constitutionally required in deportation proceedings. *See Nee Hao Wong v. INS*, 550 F.2d 521, 523 (9th Cir.1977).

■ Second, while we found that the defendants in *Gonzales Claudio* bore some responsibility for the delays in that case, a significant portion of the responsibility for the delay fell on the Government. *Id.* at 342. In Dor's case, on the other hand, the INS issued its first decision on Dor's application for Cuban–Haitian Adjustment on January 29, 1987, two weeks after it was filed. Assuming, without deciding, that within the framework of this Court's very generous stay it was permissible for Dor to pursue repeated, unsuccessful appeals of the various administrative decisions that he

is statutorily barred from adjustment, he comes perilously close to *Gonzales Claudio's* admonition that "[parties] cannot litigate pretrial matters to the ultimate degree and then rely on the extra time attributable to their * * * practice to claim that the duration of pretrial detention violates due process." *Id.* at 341. After all, Dor's continued presence in the United States, and his sustained detention, result from the simple fact that—at his urgent request and by our stay—we allowed his application to be exhaustively adjudicated by the INS. Dor has failed to demonstrate that his continued detention by the INS is a denial of due process requiring his release.

### II. What's in Store for Dor?

Dor has vigorously cultivated every avenue of relief open to him: he has sought clemency from the Governor of New York, pursued repeated appeals of his adjustment application to the AAU, tried new motions to reopen his deportation proceedings with the BIA, endeavored to have his felony conviction expunged in the New York state court, and now appeals a petition for habeas corpus and injunctive relief. While the zeal and diligence of his *pro bono publico* attorney is to be commended, we must recognize that Dor has yet to successfully convince the administrative bodies of the INS that he should be able to remain in the United States.

### Satisfaction of Our Stay

■ As we stated, *supra*, on January 20th, 1987, the length of stay of our mandate was modified to extend the stay from 21 days to "until such time as the Immigration and Naturalization Service adjudicates the applications for relief from deportation by adjustment of status to lawful permanent resident status under [IRCA § 202]" (event 15).[11] Although the terms of our stay are not directly raised on this appeal of a habeas petition, this Court having found the district court's decision unqual-

---

11. As mentioned earlier, Dor has pursued a second series of appeals before the Immigration Judge and the BIA (events 2, 3, 4). The BIA granted Dor's motion to reopen his deportation proceedings in late August of 1989, and heard

oral argument for that motion on October 11, 1989, (event 10). On November 2, 1989, the BIA denied Dor's motion to reopen his proceedings (event 11).

ifiedly correct is faced with a problem: what happens now? Obviously, this Court has full authority to vacate a stay of its own mandate. *See Miller v. Aaacon Auto Transport, Inc.*, 545 F.2d 1019, 1020 (5th Cir.1977), *cert. denied*, 449 U.S. 918, 101 S.Ct. 315, 66 L.Ed.2d 145 (1980).

In its June 12, 1989 decision, the AAU held that "the sole issue in the proceeding is whether [Dor] is statutorily ineligible for [adjustment of status under subparagraph (a)(3) of § 202 of IRCA]." (event 24) This provision, the AAU observed, "bars the adjustment of any alien if the Attorney General determines that the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." The AAU then cited immigration cases as authority that (i) manslaughter in the first degree is a "particularly serious crime," and (ii) no separate determination of dangerousness is necessary once a determination is made that an individual has been convicted of a "particularly serious crime." *See, e.g., Matter of Frentescu*, 18 I & N Dec. 244 (BIA 1982), and *Matter of Carballe*, I.D. 3007 (BIA 1986).

Dor's motion to reopen before the AAU (event 25) offered two new facts: (i) the BIA decision dismissing Dor's appeal of the District Director's denial of request for custody redetermination (event 35); and (ii) a copy of the motion filed with the BIA requesting it to reopen Dor's deportation proceedings (event 9). Finding neither fact material, the AAU concluded: "The [BIA's] decision relating to the custody of the applicant and counsel's motion to reopen de-

portation proceedings are not pertinent to the matter of the applicant's ineligibility for the benefit sought as neither affects the finding that the applicant is statutorily ineligible for adjustment of status." [12] (event 26) In light of these final administrative decisions, we find that Dor's application for adjustment of status has been sufficiently adjudicated. Accordingly, our stay is hereby vacated. The stayed mandate should issue forthwith, and the mandate affirming the instant appeal should issue forthwith.

AFFIRMED.

STAY VACATED.

### APPENDIX

#### DOR TIMELINE

| Event No. | Date | Event |
|---|---|---|
| | | *Deportation Proceedings* |
| 1. | 12/08/82 | INS institutes deportation proceedings against Dor on the grounds that he entered the United States illegally. |
| 2. | 3/12/85 | Deportation hearing held before Immigration Judge, who concludes that Dor is deportable. |
| 3. | 04/30/85 | Dor concedes his deportability, but applies for asylum and a stay of deportation. The Immigration Judge denies both of these requests. The Immigration Judge orders Dor deported and concludes that Dor, having been convicted of a "particularly serious crime ... constitutes a danger to the community of the United States," and thus is statutorily ineligible for |

---

**12.** At the heart of Dor's argument in his repeated appeals before the INS is a claim that the AAU and the District Director have erroneously relied on interpretations by the Immigration Judge and the BIA in making their decisions about Dor's application for adjustment of status. The claim can be summarized as follows: 1) the Immigration Judge and the BIA determined that Dor was an alien described in § 243(h)(2)(B) of the INA, and therefore deportable (events 2, 3, 4); 2) then, IRCA was enacted, allowing relief to Dor only if he is not an alien described in § 243(h)(2)(B) (event 12); 3) rather than relying on the previous decisions of the Immigration Judge and the BIA, Dor argues that a *de novo* determination must be made by the District

Director and the AAU as to whether he is an alien described in § 243(h)(2)(B).

Several reasons are given in support of this third assertion. The most persuasive reasons are that new administrative offices (namely, the District Director and the AAU, see 8 C.F.R. § 245.6) have been entrusted with deciding whether relief is available under IRCA, and that § 243(h)(2)(B) might require a different interpretation in light of the remedial purposes of IRCA.

Fortunately, we do not, need to embroil ourselves in these issues, since the AAU's latest decisions (events 24 and 26) that Dor is an alien described in § 243(h)(2)(B) are reached with sufficient independence.

withholding of deportation and not worthy of the favorable exercise of discretion to be granted asylum.

4. 08/20/85 BIA upholds Immigration Judge order of 4/30/85, citing same reasons as the Immigration Judge for disallowing asylum and a stay of deportation.

5. 08/29/85 Dor files petition to review BIA action of 8/20/85 in this Court.

6. 10/29/85 Petition for review of 8/29/85 is withdrawn with prejudice. Dor loses right to appeal BIA decision of 8/20/85 before this Court (effective 12/31/85).

7. 7/3/86 BIA denies Dor's motion to reopen and reconsider its 8/20/85 decision. Dor's reliance on the New York State Certificate of Relief from Disabilities (issued 12/20/85), is misplaced, according to the BIA, because it has no legal effect on the finding of deportability.

8. 12/24/86 This Court upholds, the BIA's 7/3/86 decision denying Dor's motion for reconsideration. Pursuant to Fed.R.App.P. 41(a), Dor is given 21 days before the mandate of this Court is carried out ordering Dor deported.

9. 6/23/89 Dor files motion with the BIA to reopen his deportation proceedings for the express purpose of remanding the matter to the Immigration Judge, for a hearing and a reconsideration of BIA's earlier order on whether Dor is an alien described in § 243(h)(2)(b).

10. 10/11/89 BIA hears oral argument on Dor's motion to reopen and reconsider his deportation proceedings.

11. 11/2/89 BIA denies Dor's motion of 6/23/89 to reopen deportation proceedings.

### Adjustment of Status Proceedings

12. 11/06/86 Immigration Reform and Control Act (IRCA) enacted.

13. 01/13/87 Dor moves this Court to stay its mandate "until INS adjudicates" his applications for relief, in light of the passage of IRCA. (First time IRCA is raised in Dor's proceedings).

14. 1/15/87 Dor files his adjustment application with the District Director.

15. 01/20/87 This Court grants Dor's motion of 1/13/87, staying Dor's deportation pending final adjudication of his application for adjustment of status as a Cuban/Haitian entrant under the provision of section 202 of IRCA.

16. 01/28/87 INS moves to vacate the stay by this Court.

17. 1/29/87 Dor's adjustment application is denied by the District Director. Dor appeals to the AAU.

18. 2/9/87 This Court denies the INS's motion, to vacate its 1/20/87 order staying Dor's deportation. Consequently, stay issued on 1/20/87 remains in effect.

19. 10/16/87 AAU refers case back to District Director for decision on the merits.

20. 12/07/87 District Director denies, without a hearing, Dor's application on 10/16/87 remand from the AAU.

21. 12/28/87 Dor appeals the 12/07/87 decision to the AAU.

22. 1/23/89 After a hearing, the District Director again denies Dor's adjustment application. In its decision, the District Director cites the 4/30/85 decision of the Immigration Judge finding Dor an alien under § 243(h)(2)(b), the 12/24/86 decision of this Court that specifically pointed out the Immigration Judge's 4/30/85 finding, and the 9/30/88 decision of the District Court dismissing Dor's petition for a writ of habeas corpus based on what

it called the "incontrovertible" finding that Dor was an alien described in § 243(h)(2)(b).

23. 4/6/89 Oral argument granted before the AAU.

24. 06/12/89 AAU affirms the District Director decision of 1/23/89.

25. 08/04/89 Dor files motion seeking AAU reconsideration and reopening of its 6/12/89 opinion.

26. 9/18/89 AAU denies Dor's 8/4/89 motion to reopen and reconsider his Cuban–Haitian adjustment application.

*Custody/Habeas Proceedings*

27. 5/20/84 Dor released by New York into INS custody.

28. 7/2/86 Dor requests that the District Director set conditions for his release.

29. 10/3/86 District Director, pursuant to Dor's 7/2/86 request, reinstates bond in this case in the amount of $20,000. Dor does not post bond and remains in custody.

30. 12/31/86 District Director again revokes Dor's bond and orders him detained in Service custody.

31. 8/19/88 Dor files a petition for a writ of habeas corpus (for release from custody while INS process continues) in U.S. District Court.

32. 9/29/88 District Court denies Dor's habeas corpus claims. Dor Appeals to this Court.

33. 10/4/88 Dor requests the District Director for a reconsideration of his custody status.

34. 10/26/88 District Director denies Dor's 10/4/88 request for reconsideration. District Director concludes in its denial that the basis of the request, i.e., the AAU's interest in the case, was severely diminished by the 9/29/88 dismissal of the respondent's petition for a writ of habeas corpus by the District Court. Specifically, the District Director emphasized the District Court's finding that the INS detention of Dor was not an abuse of discretion. In addition, the District Director finds significant the District Court's consideration of the respondent's eligibility for adjustment of status as a Cuban/Haitian entrant and its conclusion that the respondent's appeal from the denial of his application was not likely to succeed. Dor ordered to remain detained without bond.

35. 4/26/89 BIA affirms the District Director's 10/26/88 denial of Dor's request for redetermination of his custody status. BIA asserts lack of jurisdiction over all issues raised with regard to Dor's Cuban–Haitian adjustment application. BIA limits its inquiry on appeal to a review of the custody determination of the District Director as it relates to the necessity for and the appropriate amount of bond to ensure Dor's availability for deportation. Upon consideration of the facts and evidence presented in this particular case, the BIA concludes that Dor is a substantial bail risk and that he should not be released from INS custody.

*Other Proceedings*

36. 1972 Dor enters the United States without valid entry documents.

37. 11/17/78 Dor sentenced to a New York prison term of 5–15 years for first-degree manslaughter.

38. 6/1/88 Dor's motion to vacate his felony conviction is denied by the New York State Supreme Court, Kings County.

39. 6/19/88 Dor's request for executive clemency is denied by the New York Executive Clemency Bureau.

40. 7/5/88 Dor files a motion before the Appellate Division for a certificate granting leave to appeal the 6/1/88 denial by the New York State Supreme Court, Kings County.