995 F.2d 1063
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Nikolai OGORODNIKOV, Petitioner-Appellant,
v.
U.S. IMMIGRATION & NATURALIZATION SERVICE, District
Director, Respondent-Appellee.
 No. 92-7150.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 4, 1993
Decided: June 7, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Chief District Judge. (CA-92-1246-A)
 Argued: David Carliner, Carliner & Remes, P.C., Washington, D.C., for Appellant.
 Renee Runcel Christina, Special Counsel for Litigation, United States Immigration & Naturalization Service, Arlington, Virginia, for Appellee.
 On Brief: Kenneth E. Melson, United States Attorney, Alexandria, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before WILKINS, Circuit Judge, SPROUSE, Senior Circuit Judge, and HALLANAN, United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Nikolai Ogorodnikov, a native of the Ukraine, immigrated to the United States in 1973 as a religious and ethnic refugee. He was convicted of conducting espionage on behalf of the Soviet Union in 1985 and, after serving his sentence, was ordered deported to that country in 1990. Although allowed to remain free until his designated day of deportation in October 1991, he has been in custody since that time. He filed this appeal after the district court denied his habeas petition seeking review of two separate orders: (1) the decision of an INS District Director to continue pre-deportation detention under section 242 of the Immigration and Nationality Act, 8 U.S.C.s 1252(c); and (2) the Board of Immigration Appeals' (BIA's) dismissal of his appeal from an immigration judge's denial of his motion to reopen deportation proceedings. We affirm.
 
 
 2
 * Ogorodnikov is from Kiev, in the Ukraine. In 1973 he was paroled into the United States as a Jewish refugee, having been found by the INS to have fled the Soviet Union because of his fear of religious and ethnic persecution. In 1977 his status was adjusted to permanent resident alien.
 
 
 3
 In 1985 he was convicted in California of conspiring to transmit and communicate defense and classified information to a foreign government (the Soviet Union) in violation of 18 U.S.C.ss 371 and 794(c). His two co-conspirators were his wife, a KGB colonel, and Richard Miller, an FBI agent. Ogorodnikov was sentenced to eight years in prison. After five years, on January 19, 1990, he was paroled and transferred to the custody of the INS, which had lodged a detainer against him as a deportable alien.
 
 
 4
 On February 6, 1990, an immigration judge ordered that Ogorodnikov be deported to the U.S.S.R., finding that he was a native and citizen of that country. He issued the order under 8 U.S.C. § 1251(a)(17), which provided for the deportability of an alien found by the Attorney General to be "an undesirable resident of the United States" by reason of an espionage conviction.[1] Ogorodnikov admitted his deportability during the hearing, made no application for discretionary relief from deportation, and did not appeal.
 
 
 5
 In February 1990 the INS discharged Ogorodnikov under an order of supervision, which freed him from custody until his deportation. Ogorodnikov complied with the five conditions imposed in the order, and his probation officer found him to be a model parolee. Among other good behavior, while driving a hotel shuttle bus for his employer, he apprehended an armed felon who tried to hijack the bus. Nevertheless, the INS notified Ogorodnikov that it would deport him on October 21, 1991, and told him to report to the INS office in Los Angeles on that date. He appeared as ordered, and the INS has held him in custody ever since.
 
 
 6
 Less than a month later, in November 1991, Ogorodnikov obtained new counsel and moved to reopen his deportation proceedings to: (1) apply for asylum under 8 U.S.C. § 1158(a); (2) withhold the order of deportation to the Soviet Union under 8 U.S.C. § 1253(h); and (3) designate a new country of deportation under 8 U.S.C. § 1253(a). An immigration judge denied the motion in December 1991. The BIA dismissed Ogorodnikov's appeal in March 1992.
 
 
 7
 The Soviet Union, of course, collapsed in December 1991. In the first half of 1992, Russian representatives advised Ogorodnikov that their country would accept him. This offer has remained open but it is conditioned on Ogorodnikov "willingly" obtaining a travel document. He has thus far refused to apply for a travel document, arguing that he is not Russian, has never lived in Russia, and was expatriated from the Soviet Union when he left that country in 1973.
 
 
 8
 In June 1992, when Ogorodnikov was in a Virginia detention center, he moved the INS District Director in Arlington for release from custody under an order of supervision pending his deportation, pursuant to 8 U.S.C. § 1252(d). Section 1252(c) gives the Attorney General discretion to detain an alien for six months from the date of the alien's final deportation order.[2] Section 1252(d) forbids detention past the six-month period; after that time the Attorney General may only impose certain restrictions on the alien's movements.[3] Ogorodnikov argued that because his deportation order had been issued on February 6, 1990, the six-month period had expired and § 1252(d) required his release from custody. The District Director disagreed, concluding that the INS had not had six months "free and clear" to deport Ogorodnikov, because he had refused to leave the country.
 
 
 9
 In September 1992, Ogorodnikov filed a habeas corpus petition with the district court in Alexandria, Virginia, seeking review of both the District Director's decision to continue detention, and the BIA's dismissal of his appeal from the immigration judge's ruling denying his motion to reopen deportation proceedings. The district court denied the petition, and Ogorodnikov appeals.
 
 II
 
 10
 As to Ogorodnikov's complaint concerning his continued detention, we adopt the rationale of the Second Circuit and the district courts which have held that the Attorney General has six "unhampered" months from the date of the final deportation order during which it may detain an alien. The six-month period is tolled if the alien "hampers" his deportation by, for example, initiating litigation or refusing to leave the United States. See, e.g., Doherty v. Thornburgh, 943 F.2d 204, 211-12 (2d Cir. 1991), cert. dismissed, 112 S. Ct. 1254 (1992); Dor v. District Director, INS, 891 F.2d 997, 1002-03 (2d Cir. 1989); Bartholomeu v. District Director, INS, 487 F. Supp. 315, 319-20 (D. Md. 1980); United States ex rel. Lam Tuk Man v. Esperdy, 280 F. Supp. 303, 304 (S.D.N.Y. 1967); United States ex rel. Cafalu v. Shaughnessy, 117 F. Supp. 473, 474 (S.D.N.Y.), aff'd, 209 F.2d 959 (2d Cir. 1954) (per curiam).
 
 
 11
 The Attorney General has not had six months "free and clear" since February 6, 1990, to deport Ogorodnikov. As part of his plea bargain in his espionage trial, Ogorodnikov agreed to testify against FBI Agent Miller. His deportation was restrained until July 3, 1991, for him to fulfill that obligation. After the restraining order was lifted, the INS had an unhampered three months and eighteen days to deport Ogorodnikov between July 3 and October 21, 1991. On October 21, 1991, Ogorodnikov again obstructed his deportation by filing a petition in the United States District Court for the Central District of California to vacate his espionage conviction; that court issued a stay of deportation on the same day. The stay was vacated on December 20, 1991, when the court denied the petition. In the meantime, on November 11, 1991, Ogorodnikov had blocked his deportation by filing a motion to reopen his deportation proceedings. An immigration judge denied the motion on December 9, 1991, and the BIA dismissed Ogorodnikov's appeal on March 4, 1992. Since March 4, 1992, after Russian officials offered to accept him into their country, the only obstacle to Ogorodnikov's deportation has been his refusal to obtain a travel document to go to Russia. In short, the Attorney General has had an unhampered period of, at most, three months and eighteen days to deport Ogorodnikov; therefore, § 1252(c) continues to apply. We agree with the district court's holding that the INS District Director did not abuse his § 1252(c) discretion to continue detention, on the ground that Ogorodnikov poses a danger to the United States.
 
 III
 
 12
 Nor do we find merit to Ogorodnikov's complaint that the district court, in denying his habeas petition, failed to rule on his appeal from the BIA decision upholding the immigration judge's refusal to reopen deportation proceedings. The district court began its ruling from the bench as follows:
 
 
 13
 Mr. Ogorodnikov brings this Habeas Corpus action with regard to, (1), the March 4, 1992, decision of [the BIA] which upheld the Immigration judge's decision to deny Petitioner's request to reopen his deportation proceedings so he could apply for asylum, withholding of deportation, and designation of an alternative country of deportation; and (2) the exercise of discretion by the District Director in denying
 
 
 14
 Petitioner's request for release from custody during the pendency of the government's efforts to effectuate his deportation from the United States.
 
 
 15
 The Petitioner brings this Habeas Corpus with regard to the March 4, 1992 decision of the [BIA]'s decline to reopen, and as I have indicated there's exercise of jurisdiction.
 
 
 16
 The district court thus invoked its jurisdiction to review the BIA decision, and rejected Ogorodnikov's appeal on that issue by denying the petition in its entirety. Although the district court failed to provide reasons for its denial, in our view and considering the circumstances of this case, it is not necessary to remand for that purpose. See Albert ex rel. Buice v. Patterson, 155 F.2d 429, 433 (1st Cir.) (habeas court denying petition need not provide findings of fact), cert. denied, 329 U.S. 739 (1946). But see Tatem v. United States, 275 F.2d 894, 896 (D.C. Cir. 1960); Tucker v. Howard, 177 F.2d 494, 496-97 (7th Cir. 1949). Cf. Sumner v. Mata, 449 U.S. 539, 551 (1981) (habeas court granting petition should provide reasons); see also Casalena v. INS, 984 F.2d 105, 107-08 (4th Cir. 1993) (BIA denial on direct review to court of appeals must provide reasons).
 
 
 17
 On the merits, it is clear that the BIA correctly denied asylum and withholding of deportation because reasonable grounds existed for regarding Ogorodnikov as a danger to the security of the United States. See 8 C.F.R. § 208.14(c)(3) (asylum);[4] 8 U.S.C. § 1253(h)(2)(D) (withholding of deportation).[5] The Board also properly held that Ogorodnikov was not entitled to designate a new country of deportation. Title 8 U.S.C. § 1253(a) provides a three-step process for designating a country of deportation. The first opportunity to designate a country goes to the alien, who must do so "promptly." The Board found "no contention or any indication in the record that [Ogorodnikov] was not afforded a full opportunity to designate a country of deportation at the time of the deportation proceedings." Once the alien forgoes this opportunity, § 1253(a) allows the INS to designate any country of which the alien is a subject, national, or citizen.[6] The INS designated the U.S.S.R., which, as the Board noted, was a proper designation at the time. Obviously, the collapse of the Soviet Union in December 1991 makes that designation inoperative. In our view, however, this development does not moot the deportation order; it merely requires an amendment.[7] See, e.g., United States ex rel. Chow Yee Tung v. Harrison, 143 F.2d 128, 128-29 (2d Cir. 1944) (ordering amendment of deportation order that specified wrong name of deportation country); Seif v. Nagle, 14 F.2d 416, 417 (9th Cir.) (deportation order held properly amended where place of alien's emigration had become territory of a different nation), cert. denied, 273 U.S. 737 (1926); United States ex rel. Lisafeld v. Smith, 2 F.2d 90, 92 (W.D.N.Y. 1924) (same).
 
 
 18
 In view of the above, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 Section 1251(a)(17) was amended on November 29, 1990, after Ogorodnikov's final deportation order was issued. Under the amended statute, Ogorodnikov's crime would fall under eithers 1251(a)(2)(D)(i) or § 1251(a)(4)(A)(i)
 
 
 [2]
 Section 1252(c) provides in relevant part:
 When a final order of deportation under administrative processes is made against any alien, the Attorney General shall have a period of six months from the date of such order, or, if judicial review is had, then from the date of the final order of the court, within which to effect the alien's departure from the United States, during which period, at the Attorney General's discretion, the alien may be detained, released on bond in an amount and containing such conditions as the Attorney General may prescribe, or released on such other condition as the Attorney General may prescribe. Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or other release during such six-month period upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to effect such alien's departure from the United States within such six-month period. If deportation has not been practicable, advisable, or possible, or departure of the alien from the United States under the order of deportation has not been effected, within such six-month period, the alien shall become subject to such further supervision and detention pending eventual deportation as is authorized in this section.
 
 
 [3]
 Section 1252(d) provides:
 Any alien, against whom a final order of deportation ... has been outstanding for more than six months, shall, pending eventual deportation, be subject to supervision under regulations prescribed by the Attorney General. Such regulations shall include provisions which will require any alien subject to supervision (1) to appear from time to time before an immigration officer for identification; (2) to submit, if necessary, to medical and psychiatric examination at the expense of the United States; (3) to give information under oath as to his nationality, circumstances, habits, associations, and activities, and such other information ... as the Attorney General may deem fit and proper; and (4) to conform to such reasonable written restrictions on his conduct or activities as are prescribed by the Attorney General in his case. Any alien who shall willfully fail to comply with such regulations ... shall be fined not more than $1,000 or imprisoned not more than one year, or both.
 
 
 [4]
 "An application for asylum sha ll be denied if ... [t]here are reasonable grounds for regarding the alien as a danger to the security of the United States." 8 C.F.R. § 208.14(c)(3)
 
 
 [5]
 Section 1253(h) provides:
 (1) The Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.
 (2) Paragraph (1) shall not apply to any alien if the Attorney General determines that- ....
 (D) there are reasonable grounds for regarding the alien as a danger to the security of the United States.
 
 
 [6]
 If deportation cannot be accomplished under this step, step three authorizes the Attorney General to deport the alien to one of seven categories of countries. See 8 U.S.C. § 1253(a)(1)-(7)
 
 
 [7]
 It appears likely that Russia will be substituted as the country of deportation, but the INS has also inquired whether Israel, the Ukraine, or Italy will accept Ogorodnikov. At oral argument, however, the parties agreed that Italy and the Ukraine had refused to admit him