UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-4885
Summary Calendar
_____


OLUGBENGA BALOGUN,

Petitioner-Appellant,

versus

IMMIGRATION AND NATURALIZATION
SERVICE, JOHN B. Z. CAPLINGER,

Respondents-Appellees.

_____

Appeal from the United States District Court for the
Western District of Louisiana
_____
(December 2, 1993)


Before GARWOOD, SMITH and DeMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

Petitioner-appellant Olugbenga Balogun (petitioner) appeals the district court's dismissal of his application for writ of habeas corpus.  We hold that the district court erred in entering judgment without giving petitioner notice or the opportunity to respond to the allegations set forth by respondent-appellees Immigration and Naturalization Service and John B. Z. Caplinger (respondents).  Accordingly, we reverse and remand the case to the district court for further proceedings.

**Facts and Proceedings Below**

Petitioner is a citizen and native of Nigeria. In August of 1984, he entered the United States as a nonimmigrant student authorized to remain in this country so long as he maintained his status as a student. In July of 1987, petitioner graduated from Jacksonville State University, thereby discontinuing his student status. He did not, however, leave the country as his visa required, but instead remained in the United States. On March 17, 1990, petitioner was arrested in Anniston, Alabama and charged with illegal possession of credit cards, fraudulent use of credit cards, and forgery. In June of 1990, he pleaded guilty to the charged offenses and was sentenced to a five-year term of imprisonment in the Alabama State Penitentiary.

On September 2, 1990, the Immigration and Naturalization Service (INS) issued an order to show cause charging petitioner with deportability pursuant to section 241(a)(9) [8 U.S.C. § 1151(a)(9)] of the Immigration and Nationality Act,[1] in that he failed to comply with the conditions of the nonimmigrant status under which he was admitted. After a hearing before an immigration judge on April 24, 1991, in which petitioner admitted all of the allegations in the order to show cause, the judge found petitioner deportable as charged and ordered him deported to Nigeria. Petitioner appealed to the Board of Immigration Appeals (BIA), and on July 18, 1991, the BIA affirmed the immigration judge's order.

---

[1] Redesignated as section 241(a)(1)(C)(i) [8 U.S.C. § 1251(a)(1)(C)(i)] of the Immigration and Nationality Act of 1990, Pub.L. No. 101-649, 104 Stat. 4978, 5077, 5078.

Petitioner appealed to this court and on March 27, 1992, we affirmed the BIA decision. *Balogun v. Immigration and Naturalization Service*, No. 91-4705 (5th Cir. March 27, 1992) (unpublished).

While in custody at the INS Detention Center in El Paso, Texas, petitioner was charged with illegally obtaining telephone credit cards through the use of a false social security number and using the cards to make several thousand dollars worth of long distance telephone calls. On March 20, 1992, petitioner pleaded guilty to this offense and was sentenced by the federal district court to seven months imprisonment; the INS released petitioner to the custody of the Bureau of Prisons (BOP) pursuant to this sentence. On July 10, 1992, the BOP returned petitioner to the custody of the INS.

On January 13, 1993, upon completing six months of continuous INS custody, petitioner filed an application in the United States District Court for the Western District of Louisiana for a federal writ of habeas corpus under 28 U.S.C. § 2241; the application was referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B). In his application, petitioner alleged that his detention was unlawful because more than six months had elapsed since his deportation order became final, in violation of 8 U.S.C. § 1252(c) and (d). Petitioner contended that section 1252(c) mandates an alien's release from detention if the INS has not effected deportation within six months of the final order adjudging the alien's deportability. As relief, petitioner requested that he be released on supervision pending his deportation.

3

On March 9, 1993, the magistrate judge entered a memorandum order which directed respondents to file a response to petitioner's complaint within thirty days. The magistrate judge also ordered that after respondents had filed their answer, petitioner would have twenty days in which to file a reply to respondents' memorandum. Finally, the magistrate judge stated that after the record was complete, he would determine the necessity of an evidentiary hearing, and if no hearing was necessary, would issue a report and recommendation.

Respondents did not respond to petitioner's application within thirty days of the magistrate judge's order and on April 14, 1993, petitioner moved for summary judgment or, alternatively, default judgment. On April 21, respondents filed an "Answer and Return and Response to Summary Judgment/Default Judgment Motion" in which they conceded that they missed the filing deadline, but explained that respondents' counsel had "improperly calendared [the petition] for a sixty day response time." In their answer, respondents asserted that the habeas petition should be dismissed because petitioner's own actions caused the delay in his deportation.[2]

---

[2]    In their answer, respondents alleged, *inter alia*, the following: On August 17, 1992, the INS requested that the Nigerian Embassy provide a travel document for Balogun to effect his deportation. On September 5, 1992, officials from the Embassy interviewed Balogun, at which time they requested further information. The Embassy made another request for the same information on October 22, 1992, but Balogun has failed to produce any documentation in response to either of these requests. Petitioner refused to cooperate with Nigerian Embassy officials and told them he did not wish to be deported. The Embassy refuses to provide a travel document until Balogun's identity can be proven. The answer also alleged that petitioner "has made unsubstantiated claims to United States citizenship." It further asserted "the INS has been, at all times, ready and

4

Six days after respondents filed their answer, the magistrate judge issued a report recommending denial of petitioner's motion for summary judgment and dismissal of his application for writ of habeas corpus. The magistrate judge determined that 8 U.S.C. § 1252(c) gives the Attorney General six "unhampered" months from the date of the final order of deportation in which to deport the alien.[3] The report concluded that because petitioner "seeks to interfere with the ability of the INS to obtain travel documents for him," the INS has not had six unhampered months to effect petitioner's deportation and thus the time limit prescribed under § 1252(c) was equitably tolled by petitioner's conduct.

On May 5, 1993, petitioner filed written objections to the magistrate judge's report in which he asserted, among other things (1) that the magistrate judge's order of March 9, 1993 allowed petitioner twenty days to respond to respondents' answer; (2) that the magistrate judge's report was issued six days after respondents filed their answer; and (3) the magistrate's findings were based solely on respondents' answer and its attached exhibits. Petitioner disputed the allegations made by respondents that the delay in his deportation was due to his deliberate attempts to hamper the INS; rather, he alleged that the deportation was delayed

---

willing to deport Mr. Balogun to Nigeria in accordance with the court orders but has been unable to do so because of his obstruction of the deportation process."

[3]  8 C.F.R. § 2.1 (1991) delegates "to the [INS] Commissioner the authority of the Attorney General to direct the administration of the Service and to enforce the Act and all other laws relating to the immigration and naturalization of aliens."

because the Anniston, Alabama police department lost his passport when they arrested him in 1990 and the Nigerian Embassy would not issue a travel document without a passport. Along with his objections, petitioner filed an affidavit and other documentary evidence tending to support some of his contentions. Respondents filed nothing further.

In an order dated May 19, 1993, the district court adopted the magistrate judge's report in its entirety and dismissed petitioner's application for writ of habeas corpus. Thereafter, petitioner filed a timely notice of appeal.[4]

### Discussion

Petitioner raises two points of error on appeal. First, petitioner argues that the district court erred in relying only on respondents' answer and supporting exhibits in making the factual findings underlying its denial of petitioner's habeas corpus application. Second, petitioner argues that even if the factual findings were correct, the INS was nevertheless without authority to continue detaining him beyond the six-month period allowed by 8 U.S.C. § 1252(c). We address petitioner's second argument first.

I.   Section 1252(c)

Petitioner contends that the district court erred in concluding that the facts as it found them justified his continued detention by the INS. He argues that the plain meaning of section 1252(c) and (d) mandates that the INS release an alien subject to deportation if they cannot effect his deportation within six months

---

[4]   We subsequently granted petitioner leave to appeal *in forma pauperis* and appointed counsel to represent him.

of the final order of deportation.  Petitioner asserts that in his case the six-month period has expired and nothing allows the INS to continue detaining him.  He seeks immediate deportation or release on bond.

Both parties agree that petitioner has been in continuous INS detention since July 10, 1992, when petitioner was transferred by the BOP into INS custody.  The question then is whether the six-month period allowed under section 1252(c) for INS detention pending execution of deportation may be tolled where the alien's conduct has intentionally prevented the INS from effectuating the deportation.  Section 1252(c) reads in pertinent part:

> "When a final order of deportation under administrative processes is made against any alien, the Attorney General shall have a period of six months from the date of such order, or, if judicial review is had, then from the date of the final order of the court, within which to effect the alien's departure from the United States, during which period, at the Attorney General's discretion, the alien may be detained, released on bond in an amount and containing such conditions as the Attorney General may prescribe, or released on such other condition as the Attorney General may prescribe.  Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or other release during such six-month period upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to effect such alien's departure from the United States within such six-month period.  If deportation has not been practicable, advisable, or possible, or departure of the alien from the United States under the order of deportation has not been effected, within such six-month period, the alien shall become subject to such further supervision and detention pending eventual deportation as is authorized in this section. . . .  For the purposes of this section an order of deportation heretofore or hereafter entered against an alien in legal detention or confinement, other than under an immigration process shall be considered as being made as of the moment he is released from such detention or

confinement, and not prior thereto." 8 U.S.C. § 1252(c). Section 1252(d) provides that if deportation cannot be effected within the six-month period, the alien "shall, pending eventual deportation, be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1252(d). No other provision of the Immigration and Nationality Act explicitly provides or prohibits detention beyond the six-month period.

Respondents do not dispute that section 1252(c) allows the INS to detain an alien for six months pending his deportation; however, they contend that the six-month period is tolled if the conduct of a deportable alien is the cause of a delay in the alien's deportation. Respondents rely on case law from the Second Circuit for the proposition that the Attorney General have six "unhampered" months within which to effect deportation.

Whether the conduct of a deportable alien, which causes a delay in his deportation, can toll the six-month period allowed under section 1252(c) is an issue of first impression in this Circuit. No court that has considered the issue has held that the INS must release a deportable alien from detention if the alien engages in conduct which prolongs his detention beyond the six-month period. In contrast, the Second Circuit and several district courts have stated that the Attorney General has six "unhampered" months from the date of the final deportation order during which it may detain an alien. The six-month period is tolled if the alien "hampers" his deportation by, for example, initiating litigation regarding the validity of the deportation order. *See, e.g., Doherty v. Thornburgh*, 943 F.2d 204, 211-12 (2d Cir. 1991) (six-

8

month period is tolled if detainee-initiated litigation concerning the deportation is pending), *cert. dismissed sub nom. Doherty v. Barr*, 112 S. Ct. 1254 (1992); *Dor*, *supra*, 891 F.2d at 1002-03 (same); *Bartholomeu v. District Director, Immigration and Naturalization Serv.*, 487 F.Supp. 315, 319-20 (D. Md. 1980) (same); *United States ex rel. Lam Tuk Man v. Esperdy*, 280 F.Supp. 303, 304 (S.D.N.Y. 1967) (same); *United States ex rel. Cefalu v. Shaughnessy*, 117 F.Supp. 473, 474 (S.D.N.Y.), *aff'd on opinion below*, 209 F.2d 959 (2d Cir. 1954) (per curiam) (same). *Cf. Castillo-Gradis v. Turnage*, 752 F.Supp. 937, 940 (S.D. Cal. 1990) (noting that further detention may be justified when the "actions of the deportable alien are solely responsible for the delay"). In *Dor,* the Second Circuit affirmed the district court's denial of an alien's habeas corpus petition seeking release from detention pursuant to section 1252(c). 891 F.2d at 1002-03. The court concluded that because the alien had obtained a stay of the deportation order, the six-month period had not begun to run. In coming to its conclusion the court stated that "[w]hen the actions of the alien prevent the INS from effecting deportation, delaying tactics do not support the alien's claim for release from deportation." *Id.* at 1002.

All of the above cases finding that an alien's conduct hampered the Attorney General in effecting the alien's deportation involved the alien's use of the judicial process to delay deportation.[5] Here, respondents allege that petitioner has

---

[5] In a case with facts similar to those of the case at bar the Fourth Circuit, in an unpublished opinion, adopted the reasoning

hampered their attempts to effect his deportation by deliberately withholding information and otherwise obstructing the INS from obtaining a travel document from the Nigerian Embassy. Although the conduct alleged to have hampered the INS is not petitioner's initiation of litigation, the principle established by the Second Circuit that an alien is not entitled to relief for a delay that he himself has intentionally caused applies with greater force when the conduct in question is not connected to his legitimate right of recourse to the judicial system, but rather is the deliberate obstruction of an otherwise imminent deportation. While we do not determine the accuracy of respondents' allegations, we conclude that *if* petitioner by his conduct intentionally caused the delay of which he now complains, it would be inequitable to allow him to benefit from that delay. The alien should not be allowed to profit from his own wrong and *contra non valentem agere nulla currit praescriptio*. Hence, we hold that if it is shown that petitioner by his conduct has intentionally prevented the INS from effecting his deportation, the six-month period should be equitably tolled until petitioner begins to cooperate with the INS in effecting his deportation or his obstruction no longer prevents the INS from bringing that about. *Cf. Irwin v. Veterans Administration*, 111

---

of the Second Circuit cases which held that the Attorney General has six "unhampered" months within which it may detain an alien pending deportation. *See Ogorodnikov v. Immigration and Naturalization Serv.*, 1993 WL 192766 (4th Cir. June 7, 1993) (per curiam). In affirming a district court's denial of habeas relief for an alien detained pending deportation, the *Ogorodnikov* court concluded that when "the only obstacle to [petitioner's] deportation has been his refusal to obtain a travel document to go to Russia," petitioner's hampering of the INS's attempts to deport him tolled the six-month period. *Id*. at *3.

S.Ct. 453, 457 (1990) (equitable tolling of time limit for suit against the government); *Honda v. Clark*, 87 S.Ct. 1188, 1196-97 (1967) (same as to claim).

II.  Procedural Infirmities

Petitioner next argues that even if it is possible to toll the six-month period under section 1252(c) based on the conduct of the alien subject to deportation, the district court erred by not allowing petitioner to rebut the allegations of respondents' answer.  Specifically, petitioner contends that the district court's dismissal of his habeas petition amounted to a *sua sponte* grant of summary judgment in favor of respondents.  Petitioner argues that the district court erred in relying only on respondents' answer and supporting exhibits to determine the facts underlying its grant of summary judgment, without giving petitioner notice or opportunity to respond.

In the case *sub judice*, the district court adopted the magistrate judge's report that recommended dismissal of petitioner's application based on the allegations in respondents' April 21, 1993 answer and the exhibits attached thereto.[6]  Although the district court did not state that it was granting summary judgment in favor of respondents, a decision which disposes of a party's claim by reference to evidence from outside of the pleadings is construed as a grant of summary judgment.  *See United*

---

[6]   The magistrate judge's factual findings are almost a verbatim recitation of allegations in respondents' answer, and the report's conclusion that petitioner has intentionally interfered with the ability of the INS to obtain a travel document is based solely on allegations in the answer and attached unverified exhibits.

*States v. East Baton Rouge Parish Sch. Bd.*, 594 F.2d 56, 57 n.3 (5th Cir. 1979) (citing *Moch v. East Baton Rouge Parish Sch. Bd.*, 548 F.2d 594 (5th Cir.), *cert. denied*, 98 S.Ct. 183 (1977)).

Rule 56(c), Fed. R. Civ. P., permits a court to grant summary judgment in favor of a party that did not request it, but only upon proper notice to the adverse party. *NL Industries, Inc. v. GHR Energy Corp.*, 940 F.2d 957, 965-66 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 873 (1992). However, when granted *sua sponte*, summary judgment is governed by Rule 56's requirement of ten days notice and an opportunity to respond. *See, e.g., Powell v. United States*, 849 F.2d 1576, 1577 (5th Cir. 1988) (noting that "settled precedent in this circuit bars entry of summary judgment without the ten days notice mandated by Fed.R.Civ.P. 56(c)"). *See also Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2554 (1986); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 283 n.7 (5th Cir. 1993); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 444-45 (5th Cir. 1991); *McCarty v. United States*, 929 F.2d 1085, 1088 (5th Cir. 1991).

Here, the magistrate judge failed to give petitioner any notice that he was considering recommending summary judgment in favor of respondents. The magistrate judge also failed to give petitioner any time to reply to respondents' memorandum, much less the twenty days granted to petitioner by the magistrate judge in his March 9, 1993, memorandum order. Petitioner asserts that he is not responsible for the delay in his deportation; rather, he contends that the Nigerian Embassy will not provide him with a travel document because he has no passport, and the reason he has

12

no passport is that it was confiscated by the police in Anniston, Alabama after his 1990 arrest. While we do not determine the veracity of petitioner's assertions, we acknowledge that he should have been given the opportunity to substantiate them. Hence, by adopting the magistrate judge's report and recommendation in the face of petitioner's written objections and dismissing petitioner's application for habeas relief the district court erred. Accordingly, we remand the case for further proceedings not inconsistent herewith.

REVERSED and REMANDED