**Jeremy E. RILEY, Applicant,**

v.

**Joseph R. GREENE, Respondent.**

**No. CIV.A. 00–D–1775.**

United States District Court,
D. Colorado.

May 9, 2001.

Jeremy E. Riley, ASurora, CO, pro se.

Michelle E. Gorden, U.S. Dept. of Justice, Office of Immigration Lit., Washing-

ton, DC, Mark S. Pestal, U.S. Attorney's Office, Denver, CO, for Immigration and Naturalization Service, Joseph R. Greene.

## ORDER OF DISMISSAL

DANIEL, District Judge.

Applicant Jeremy E. Riley is in the custody of the United States Immigration and Naturalization Service (INS) at the Wackenhut Detention Facility at Aurora, Colorado. Mr. Riley has filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (1994) challenging the final order of deportation issued by the INS. On December 18, 2000, I ordered Respondent to show cause why the habeas corpus application should not be granted. On February 8, 2001, Respondent filed a response seeking dismissal of the action for lack of jurisdiction and denial of Applicant's request for release. On March 12, 2001, Mr. Riley filed a rebuttal to the response.

I must construe the application and other papers filed by Mr. Riley liberally because he is a *pro se* litigant. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). However, I should not act as a *pro se* litigant's advocate. *See Hall,* 935 F.2d at 1110. After reviewing the entire file, I find that an evidentiary hearing is not necessary. The application and associated motions will be denied for the reasons stated below.

### I. Factual and Procedural Background

Mr. Riley is a native of Egypt and a citizen of Lebanon. He was admitted into the United States on or about July 12, 1985, as a nonimmigrant visitor. He was authorized to stay until January 11, 1986. On August 2, 1990, he was charged with deportability for overstaying his tourist visa. He applied for asylum and withholding of deportation which were denied on January 16, 1991, by the immigration judge. He appealed the judge's decision, and deportation proceedings were stayed on April 15, 1991, by the Board of Immigration Appeals (BIA) pending determination of whether Mr. Riley qualified for temporary protected status. In July 1994 the INS moved to reinstate the appeal. On November 28, 1998, the BIA reinstated and dismissed the appeal. The BIA ordered Mr. Riley to voluntarily depart within thirty days of the order or of granting an extension, and if he did not voluntarily depart to be deported as set forth by the immigration judge. Mr. Riley did not appeal the BIA's decision to the United States Court of Appeals for the Tenth Circuit, nor did he voluntarily depart. On August 30, 1999, a warrant of deportation was issued based on Mr. Riley's final deportation order. When Mr. Riley did not appear for deportation by September 21, 1999, he was arrested and transferred to the Wackenhut Detention Facility in Aurora, Colorado, where he currently is held.

### II. Standard of Review

#### A. Jurisdiction

Respondent first asks that the application be dismissed for lack of jurisdiction. In support of this argument Respondent cites the Immigration and Nationality Act (INA) § 242(g), 8 U.S.C. § 1252(g) (Supp. IV 1998) that was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), and *Reno v. American–Arab Anti–Discrimination Committee, et al.,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) ("*AADC*").

Specifically, Respondent contends that under § 242(g) there is no jurisdiction in any federal court to consider the Attorney General's decisions to commence proceedings, adjudicate cases or execute removal orders, except as provided otherwise under § 242 of the INA. Respondent further con-

tends that because the application is only an attempt by Mr. Riley to delay, and further frustrate the INS's efforts to enforce a final deportation order issued against him, it is not judicially reviewable. Respondent cites to *AADC; Bhatt v. Reno,* 204 F.3d 744, 748 (7th Cir.1999) (affirming the district court's holding that § 242(g) barred federal court jurisdiction to review the alien's habeas corpus action, which was filed after the INS issued a letter directing him to report for deportation, when the alien had already obtained full administrative and judicial review of his challenges to the final deportation order); and *Mapoy v. Carroll,* 185 F.3d 224, 228 (4th Cir.1999) (holding that § 242(g) precluded jurisdiction to review the petitioner's "thinly veiled attempt to evade the dictates" of the statute, when he filed suit challenging deportation and seeking release from detention after the INS issued a letter ordering him to report for deportation, and his administrative deportation proceedings were complete).

██ Section 1252(g) provides that:

Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

The Supreme Court has narrowly interpreted § 1252(g) to apply only to the three discrete actions of the Attorney General specified in the statute including the acts of commencing proceedings, adjudicating cases, or executing removal orders. *See AADC,* 525 U.S. at 482, 119 S.Ct. 936. The Supreme Court in *AADC* found that there are many other decisions or actions that may be part of the deportation process including the refusal to reconsider a final deportation order. *AADC,* 525 U.S.

at 482, 119 S.Ct. 936. Mr. Riley asserts violations of his right to due process in the INS's refusal to grant him supervised release pending deportation and its refusal to grant his motion to reopen the deportation proceedings. Mr. Riley's claims, therefore, do not challenge the Attorney General's decision to commence proceedings against him, to adjudicate his case, or to execute the removal order.

██ Moreover, the writ of habeas corpus traditionally has been available to aliens in deportation proceedings. *See Jurado–Gutierrez v. Greene,* 190 F.3d 1135, 1146 (10th Cir.1999), *cert. denied,* 529 U.S. 1041, 120 S.Ct. 1539, 146 L.Ed.2d 352 (2000). Pursuant to *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) and *Ex parte Yerger,* 75 U.S. (8 Wall.) 85, 19 L.Ed. 332 (1868), any repeal of traditional habeas corpus jurisdiction pursuant to 28 U.S.C. § 2241 must be explicit. *See, e.g., Mahadeo v. Reno,* 226 F.3d 3, 10 (1st Cir.2000). Section 1252(g) contains no explicit language sufficient to repeal the court's traditional habeas corpus jurisdiction.

Therefore, I have jurisdiction in this action under § 2241 and may proceed to review the merits of the claims asserted.

Mr. Riley asserts that his due process rights have been violated and that he is being subjected to cruel and unusual punishment. Specifically Mr. Riley sets forth three claims: (1) that he is unjustifiably denied discretionary supervised release; (2) that he is being punished excessively for refusing to depart to the Arab World which he views as hostile and foreign; and (3) that he is being denied discretionary relief from deportation even though he is entitled to relief in light of his unique circumstances.

*B. Supervised Release*

I first will consider Mr. Riley's supervised release claim. Respondent contends

that due to Mr. Riley's refusal to cooperate with the INS's efforts to enforce his final deportation order, the INS has full statutory authority and discretion to detain him until the final order is executed and he is removed from the United States pursuant to INA § 242(c), 8 U.S.C. § 1252(c), and INA § 241(a), 8 U.S.C. § 1231(a)(1)(C) (Supp. IV 1998). (Resp. at 11.)

Mr. Riley alleges that he has been detained since September 1999 pending final deportation. (Am. Pet. at 7.) He further alleges that he is no threat to the community, and that he is settled in the community and not a flight risk. (*Id.* at 6.) He also claims that he is a stable, dependable person and has made a good-faith effort to comply with the deportation order by petitioning the Canadian government for an immigrant visa. (*Id.* at Attach. p. 1.) He further claims that if he is not released within a month from the filing of the instant application he will have to file bankruptcy and will be homeless and in need of government assistance. (*Id.*)

Respondent maintains that since Mr. Riley's deportation proceedings commenced in 1990 the proceedings are governed by § 242 of the INA, 8 U.S.C. § 1252 (1994). Respondent further maintains that Mr. Riley's post-order detention is governed by the pre-amended immigration laws governing post-order detention, as set forth in § 242 of the INA. Mr. Riley does not dispute this position. I therefore will analyze Mr. Riley's claim under 8 U.S.C. § 1252 (1994).

Section 1252(c) (1994) states:

When a final order of deportation under administrative processes is made against any alien, the Attorney General shall have a period of six months from the date of such order, or, if judicial review is had, then from the date of the final order of the court, within which to effect the alien's departure from the United States, during which period, at the Attorney General's discretion, the alien may be detained, released on bond in an amount and containing such conditions as the Attorney General may prescribe, or released on such other condition as the Attorney General may prescribe. Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or other release during such six-month period upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to effect such alien's departure from the United States within such six-month period. If deportation has not been practicable, advisable, or possible, or departure of the alien from the United States under the order of deportation has not been effected, within such six-month period, the alien shall become subject to such further supervision and detention pending eventual deportation as is authorized by this section.

Although § 1252(c) does not specifically provide for an extension of the six-month time frame to effect an alien's departure, the section does allow for further supervision and detention pending eventual deportation. At least two federal circuit courts and several district courts have found that if an alien contributes to the delay of his departure he is not allowed the benefit of a release pending his actual removal, and the six-month period to effect an alien's departure is tolled. *Balogun v. INS*, 9 F.3d 347, 351 (5th Cir.1993); *see, e.g., Doherty v. Thornburgh*, 943 F.2d 204, 211–212 (2d Cir.1991) (six-month period is tolled if detainee-initiated litigation concerning the deportation is pending), *cert. dismissed sub nom. Doherty v. Barr*, 503 U.S. 901, 112 S.Ct. 1254, 117 L.Ed.2d 485

(1992); *Dor v. District Director, INS*, 891 F.2d 997, 1002–03 (2d Cir.1989) (same); *Bartholomeu v. District Director, INS*, 487 F.Supp. 315, 319–20 (D.Md.1980) (same); *United States ex rel Lam Tuk Man v. Esperdy*, 280 F.Supp. 303, 304 (S.D.N.Y.) (same); *United States ex rel Cefalu v. Shaughnessy*, 117 F.Supp. 473, 474 (S.D.N.Y.1954), *aff'd on opinion below,* 209 F.2d 959 (2d. Cir.1954) (per curiam) (same).

All of the above cases, except for *Balogun,* involved the use of the judicial process to delay deportation. In *Balogun* the alien's conduct in delaying the deportation did not involve the alien's use of the judicial process to delay deportation, but it was an attempt to deliberately withhold information and otherwise to obstruct the INS from obtaining a travel document from a foreign embassy. *Balogun,* 9 F.3d at 351. The court in *Balogun* also determined that when an alien intentionally causes a delay, as opposed to seeking use of the judicial process to delay deportation, the denial of relief is applied with even greater force. *Id.*

■ I concur with *Balogun* in the tolling of the detention period when an alien intentionally causes a delay.

Here, in Mr. Riley's deportation proceeding, before the immigration judge, he admitted the allegations in the order to show cause, he conceded deportability, but he refused to name any country of choice for deportation. (Resp. at Att. A.) Not until June 2000 did Mr. Riley attempt to contact the Canadian government seeking immigration status in that country. (Consolidated Mot. Supervised Release at Ex. O at p. 1.) Mr. Riley also claims that he now has communicated with both Egypt and Lebanon and has renounced his citizenship with both countries. (*Id.* at 10.) I find that Mr. Riley's belated attempts at seeking immigration status in Canada and renouncing his citizenship in Egypt and Lebanon are nothing more than delay tactics.

Mr. Riley does not deny that he refused to assist the INS in completing travel arrangements to Lebanon. Further his claim that his unwillingness or inability to depart is for good reason (Reply at 3.) does not provide a basis for a claim that he is not hampering the INS attempts to effect his deportation. Also, Mr. Riley's attempt to prove that the INS is responsible for the delay in his departure by complaining that the INS did not attempt to seek deportation until after he filed the instant action lacks merit. (*Id.* at 12.) Respondent has provided documentation that as early as October 1999 Mr. Riley refused to assist the INS in completing traveling documents. (Resp. at Attach. H.)

Mr. Riley also claims that because he is not a criminal he should not·be subject to long-term detention. Mr. Riley provides no basis for this claim, other than that the cases cited by Respondent involve only aliens who have committed a crime. Nothing in § 1252(c) references to criminal offenders or limits the application of the subsection to criminal offenders.

■ Mr. Riley has had opportunity to request departure to a country other than Egypt or Lebanon and has had sufficient time to effect such a request I find no violation of Mr. Riley's due process rights in his continued detention pending deportation pursuant to § 1252(c) and applicable case law.

■ To the extent that Mr. Riley claims he has a due process right arising from the Due Process Clause itself in release pending deportation, his claim is misplaced. Mr. Riley contends that he will lose his property, and become bankrupt and homeless if he is not granted release pending deportation. Mr. Riley is subject to a final

removal order and the only step remaining is the execution of the removal order effectuating the physical expulsion from this country. Any right he had to remain at large in this country has been extinguished. *See Ho v. Greene,* 204 F.3d 1045, 1059 (10th Cir.2000).

I find no constitutional deprivation in Mr. Riley's continued detention and no reason that he is unjustifiably denied discretionary supervised release.

## C. Excessive Punishment

Next I will consider Mr. Riley's claim that he is being subjected to excessive punishment for refusing to depart to either Lebanon or Egypt. Respondent maintains that Mr. Riley's detention pending his deportation is not punishment. (Resp. at 23–25.) Respondent further maintains that Congress has provided for detention during the specified removal period in the interest of promoting the expeditious removal of aliens who are not entitled to remain in the country. *(Id.)* Given such rational legitimate, non-penal reasons for detention during the removal period, Respondent argues that Mr. Riley's detention cannot be deemed unconstitutional punishment pursuant to *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). *(Id.)*

Mr. Riley claims that he has never been charged or convicted of any felony or misdemeanor, yet he is being punished excessively for refusing to depart to the Arab World. He further contends that due to his detention he has suffered mental anguish and will lose his home and property if he is not released.

Determining if Mr. Riley is being punished depends on whether the detention is imposed for the purpose of punishment, or if it may be considered merely incidental to another legitimate government purpose. *See Salerno,* 481 U.S. at 747, 107 S.Ct. 2095. According to *Salerno* if a detention

is intended as a legitimate regulation then it must be determined whether there is an alternative non-punitive purpose which may rationally be assigned to the detention and whether the detention "appears excessive in relation to the alternative purpose assigned [to it]." *Salerno,* 481 U.S. at 747, 107 S.Ct. 2095 (internal citation omitted).

■ Detention is justified due to Mr. Riley's failure to appear for deportation and his refusal to assist in obtaining traveling documents to effect departure. Further, due to Mr. Riley's explicit refusal to cooperate and his recent attempt to renounce his citizenship in both Egypt and Lebanon there is basis for the belief that if he were released he would flee. Therefore, I find that there is an alternative non-punitive purpose for Mr. Riley's detention. I further find in light of Mr. Riley's refusal to cooperate that the detention is not excessive in relation to the purpose for the detention. Therefore, Mr. Riley is not being subjected to excessive punishment.

## D. Discretionary Relief from Deportation

Finally, I will address Mr. Riley's claim that the INS is denying him discretionary relief from deportation even though he is entitled to relief in light of his unique circumstances. Respondent claims that Mr. Riley is not entitled to relief from deportation in the form of suspension of deportation because there is no right to this discretionary relief from deportation pursuant to *Jay v. Boyd,* 351 U.S. 345, 354, 76 S.Ct. 919, 100 L.Ed. 1242 (1956) (a grant of discretionary relief from deportation is a matter of grace, not right). (Resp. at 25–27.) Further, Respondent maintains that a motion to reopen such as Mr. Riley filed with the INS is based upon a favorable exercise of discretion to which there is no right or entitlement pursuant

to 8 C .F.R. § 3.2(a) (2000), *INS v. Doherty*, 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992), and *INS v. Abudu*, 485 U.S. 94, 107, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988). (*Id.*) Respondent also asserts that the basis Mr. Riley sets forth for reopening his deportation proceedings, ineffective assistance of counsel, lacks merit. (*Id.* at 27–30.)

To the contrary, Mr. Riley contends that the INS has abused its discretion in not reopening his deportation proceedings for various reasons, including: (1) that his counsel failed to obtain asylum for him; (2) that his counsel failed to properly file the application for suspension of deportation and now he is ineligible for a suspension of deportation; (3) that his counsel never filed a brief when he appealed to the BIA; (4) that his counsel failed to argue his changed circumstance when he requested a motion to reopen deportation proceedings; (5) that the INS ignored his letters; and (6) that he is denied his right to pursue permanent residency pursuant to 8 U.S.C. § 1255(i). (Reply at 3–7.)

*1. Discretion to Reopen*

■ There is no statutory provision for the reopening of a deportation proceeding, and the authority for such motions derives solely from regulations promulgated by the Attorney General. *INS v. Rios–Pineda*, 471 U.S. 444, 446, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985). The Attorney General has "broad discretion" to grant or deny such motions. *Id.* at 449, 105 S.Ct. 2098. Congress holds plenary powers over immigration matters. *Kleindienst v. Mandel*, 408 U.S. 753, 766, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972). The courts only ensure that the executive branch enforces immigration laws in accordance with the procedural safeguards established by Congress. *Id.* In order for a regulation to create a liberty interest it must substantively limit the exercise of official discretion through specifically defined criteria

that guides official decision making. *Velasco–Gutierrez v. Crossland*, 732 F.2d 792, 796 (10th Cir.1984) (citing *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983)).

■ The failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest. *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981) (a state inmate does not enjoy a constitutionally protected liberty interest in having his or her sentence commuted, even where the state consistently commuted the sentences of inmates in most cases). The Tenth Circuit previously has relied on *Dumschat* in determining that deferred action by the INS does not give rise to a constitutionally protected liberty interest because the INS has unfettered discretion to determine who is entitled to deferred action. *See Velasco–Gutierrez*, 732 F.2d at 797. Very similar to the type of relief at issue in *Dumschat* and in *Velasco–Gutierrez* suspension of deportation is an "act of grace" subject to the "unfettered discretion" of the BIA. *See Jay*, 351 U.S. at 354, 76 S.Ct. 919.

On August 8, 2000, Mr. Riley sent a letter to the District Director for the INS requesting that the Director join him in filing a motion with the BIA to reopen and remand his case. (Doc. No. 8 (Ex. D) at p. 1.) Because Mr. Riley's motion was untimely and because his counsel had filed a previous motion to reopen he sought the Director's agreement as 8 C.F.R. § 3.2(c)(3)(iii) forgives time and numerical limitations if parties agree to filing a motion to reopen. The District Director declined the request to join in filing a motion to reopen. The regulation under which Mr. Riley sought a motion to reopen, 8 C.F.R. § 3.2(c)(3)(iii), lacks criteria or standards limiting official discretion so the government has unfettered discretion to

deny the requested relief for no reason at all. *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1293 (10th Cir.2001).

 Based on the foregoing stated law and facts I find that the District Director did not violate Mr. Riley's due process rights in denying his request to reopen deportation proceedings. Nonetheless, I will review the merits of Mr. Riley's individual claims that he sets forth as a basis for reopening his deportation proceedings.

### 2. Ineffective Assistance of Counsel

Mr. Riley bases his ineffective assistance of counsel claim on his counsel's failure to process an application for suspension of deportation prior to the enactment of IIRIRA and the retroactive "stop-time" rule. He further claims ineffective assistance of counsel because his counsel was not successful in obtaining a grant of asylum and because his counsel failed to file a brief when he appealed the immigration judge's decision to the BIA. He also alleges that his counsel was ineffective when he filed a motion to reopen the deportation proceedings but failed to argue substantial changes in Mr. Riley's circumstances in the motion.

 There is no right to appointed counsel in deportation proceedings. *Michelson v. INS*, 897 F.2d 465, 468 (10th Cir.1990) (citing *Burquez v. INS*, 513 F.2d 751, 755 (10th Cir.1975)). An alien is entitled to due process in a deportation proceeding, however due process does not equate to an automatic right to counsel. *Michelson*, 897 F.2d at 468 (citing *Trench v. INS*, 783 F.2d 181, 183 (10th Cir.1986)). Before a court may intervene an alien must demonstrate prejudice which implicates the fundamental fairness of the proceeding. *Michelson*, 897 F.2d at 468. To prevail on a claim of ineffective assistance of counsel at a deportation proceeding, an alien must show not only ineffective representation, but also prejudice to him which

occurred as a result of that ineffectiveness. *Figeroa v. United States INS*, 886 F.2d 76, 78 (4th Cir.1989) (citations omitted).

### a. Suspension of Deportation

The suspension of deportation allows an alien, who can demonstrate that among other things he has been continuously present in the United States for at least seven years, to suspend his deportation and adjust his status to legal permanent residence. 8 U.S.C. § 1254(a) (1994). Prior to the enactment of IIRIRA, under the INA the time an alien spent in deportation proceedings counted toward the requirement for continued residence or continued physical presence. Pursuant to IIRIRA, § 240A(d)(1) of the INA now provides that the period of continuous physical presence for purposes of determining eligibility for cancellation of removal (previously known as suspension of deportation) is deemed to end when the alien is served with a notice to appear. 8 U.S.C. § 1229b(d)(1) (2000). This new rule is referred to as the stop-time rule.

The IIRIRA's "Transitional Rule with Regard to Suspension of Deportation" states that the new stop-time rule "shall apply to notices to appear issued before, on or after the date of the enactment of this Act [Sept. 30, 1996]." The stop-time rule applies to all pending deportation proceedings regardless of the nature of the initiating document, whether it is an order to show cause or notice to appear. *See Rivera–Jimenez v. INS*, 214 F.3d 1213, 1217 (10th Cir.2000). Mr. Riley's deportation proceedings were initiated on August 2, 1990, when a show cause order was issued. The proceedings continued until November 27, 1998, when the BIA issued a decision on his appeal. Because Mr. Riley's deportation proceedings continued well past September 30, 1996, the date of enactment, the IIRIRA's transitional rules

apply to his deportation proceedings and so does the stop-time rule. *Rivera–Jimenez*, 214 F.3d at 1217. Only if Mr. Riley's deportation proceeding had terminated prior to the transitional rule effective date would the stop-time rule not apply.

Mr. Riley entered the United States on or about July 12, 1985. Because an Order to Show Cause and Notice of Hearing was issued on August 2, 1990, Mr. Riley was not in the United States for at least seven years prior to the initiating of his deportation proceedings. He was only in the United States a little over five years prior to the issuing of the order to show cause.

The only possible scenario under which Mr. Riley may state a claim would be if his deportation proceedings would have terminated before the enactment date of IIRIRA and the application had not been filed. This is not the case in Mr. Riley's proceedings. Mr. Riley's only claim with respect to the suspension of deportation application is that he was denied due process because he would not have been subjected to the stop-time rule had the application been filed when he thought it was filed in September 1994. This claim lacks merit.

I find that because Mr. Riley's deportation proceedings were pending before, on, and after the enactment of IIRIRA he is statutorily ineligible for a suspension of deportation or for what now is referred to as a cancellation of removal.

 I further find that Mr. Riley's claim that counsel was ineffective because he failed to submit or process the application lacks merit. Mr. Riley does not set forth any act by counsel with respect to the application that but for that act he would have been granted a suspension of deportation and therefore the act was prejudicial to Mr. Riley.

*b. Asylum*

 As for Mr. Riley's claim that counsel was ineffective in not obtaining asylum

for him the claim lacks merit. The BIA has discretion to grant asylum to an otherwise deportable alien who qualifies as a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A). The grant of asylum is a two-step process. *Kapcia v. INS*, 944 F.2d 702, 706 (10th Cir.1991). The alien must first establish that he is eligible for refugee status and then the BIA applies its discretion to grant or deny asylum. In Mr. Riley's case neither the immigration judge nor the BIA concluded that Mr. Riley qualified for refugee status. Upon review of the immigration judge's decision it is apparent that Mr. Riley's counsel provided great detail in his argument for asylum, as noted by the immigration judge. (Resp. at Att. A.) Further, Mr. Riley provides no new information that his counsel failed to present in arguing for his asylum. Again, I find that Mr. Riley does not set forth any act by counsel with respect to the asylum petition that but for that act he would have been granted asylum and therefore the act was prejudicial to Mr. Riley.

*c. Filing of Brief on Appeal*

 As for Mr. Riley's claim that counsel was ineffective in not filing a brief, Mr. Riley fails to present what further briefing should have been given and how the presentation of any further briefing would have assisted in the granting of his asylum. Although on the notice form submitted to the BIA by counsel it is indicated that counsel signified an intent to file a separate written brief or statement after receipt of the transcribed decision of the immigration judge this is no more than the reservation of the right to file such a brief. (Reply at Ex. T.) There is not a mandatory requirement to file a brief that if not done would jeopardize the integrity of the appeal. I find that Mr. Riley fails to show any prejudicial act by counsel in not sub-

mitting further briefing to the BIA on his appeal.

### d. Motion to Reopen

 With respect to the motion to reopen, it appears that Mr. Riley's counsel attempted to submit a timely motion to reopen the proceedings in November 1999 but apparently was denied. (Consolidated Mot. Supervised Release, Ex. F at 2.) As for Mr. Riley's claim that counsel was ineffective in not arguing a substantial change in Mr. Riley's circumstances in the motion to reopen the claim lacks merit. Mr. Riley appears to argue throughout his filings in the instant action that he is entitled to a reconsideration of the order of deportation because of his financial circumstances and what he will stand to lose if he is deported. This claim is without merit. "[E]conomic detriment alone is insufficient to satisfy the extreme hardship requirement." *Michelson*, 897 F.2d at 465. A "generalized reluctance to leave the United States because he has become accustomed to it, though understandable, does not rise to the level of extreme hardship." *Id.* Mr. Riley's claim that counsel was ineffective in not arguing his changed circumstances is without a legal basis. I find that Mr. Riley was not prejudiced by his counsel's decision to seek a motion to reopen the deportation proceeding based on reasons other than Mr. Riley's changed circumstances.

### e. Conclusion

Based on the above, I find that Mr. Riley's ineffective assistance of counsel claim is without merit.

### 3. INS Failure to Respond and 8 U.S.C. § 1255(i)

 As for Mr. Riley's claims that he is entitled to a reopening of his deportation proceedings because the INS failed to respond to his letters and because he is entitled seek permanent residency pursu-

ant to 8 U.S.C. § 1255(i) they lack merit. In and of itself the failure of the INS to respond to his letters does not rise to the level of a due process violation and justify the reopening of his deportation proceedings. Further, Mr. Riley's reliance on § 1255(i) is misplaced. The inability to pursue permanent residency under § 1255(i) does not state a due process claim, nor does it provide a basis for reopening deportation proceedings.

### III. Conclusion

In conclusion, I find that Mr. Riley has failed to state either a due process claim or a cruel and unusual punishment claim. I further find that he is not entitled to either a supervised release pending final deportation or a granting of a motion for reopening the deportation proceedings. Accordingly, the application for relief pursuant to § 2241 will be denied. It is therefore

ORDERED that the habeas corpus application is DENIED and the action is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that each party shall bear his costs and attorney's fees. It is

FURTHER ORDERED that Mr. Riley's motion to stay custody, motion to consider granting parole, motion for injunctive relief, motion for conference, and motion for summary judgment showing cause or recusal are DENIED as moot.