**Mazen Al NAJJAR, Petitioner,**

v.

**John ASHCROFT, Attorney General, United States Department of Justice; James Ziglar, Commissioner, Immigration and Naturalization Service; Paul Schmidt, Chairman, Board of Immigration Appeals; Robert Wallis, District Director, Miami District of the INS; and Donald McKelvy, Warden, Federal Correctional Complex Coleman, Coleman, Florida, Respondents.**

No. 0220261CIV.

United States District Court,
S.D. Florida.

Feb. 19, 2002.

Ira Jay Kurzban, Kurzban Kurzban Weinger & Tetzeli, Randall C. Marshall, ACLU Foundation of Florida, Miami, FL, Nancy Chang, Center for Constitutional Rights, New York, NY, David D. Cole, Georgetown University Law Center, Washington, DC, for Mazen al Najjar.

Dexter Lee, United States Attorney's Office, Miami, FL, Ethan B. Kanter, David D. Ogden, United States Justice Department, Immigration Litigation, Washington, DC, for all Defendants.

## ORDER DENYING COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION FOR HABEAS CORPUS AND EMERGENCY MOTION FOR RELEASE AND PRELIMINARY INJUNCTION

LENARD, District Judge.

**THIS CAUSE** is before the Court on the Complaint for Declaratory and Injunctive Relief and Petition for Habeas Corpus (D.E.1) and Emergency Motion for Release and Preliminary Injunction (D.E.3), filed December 19, 2001, by Petitioner Mazen al Najjar. The Government filed a Reply on December 21, 2001. (DE 22.) On December 21, 2001, the Court requested additional briefing from the parties. (D.E.21.) Petitioner submitted its Brief on December 27, 2001. (D.E.23.) The Government filed a Reply on January 15, 2001. (D.E.24.) On January 22, 2002, the Court ordered the Government to brief an additional issue. (D.E.26.) The Government filed its Reply on January 23, 2002. (D.E.28.) Petitioner submitted a Response on January 29, 2002. (D.E.29.) Having reviewed the record in its entirety, the Court finds as follows.

## I. Factual and Procedural Background

This case unfolds as the third chapter in a series of legal actions involving Petitioner. The first was the Government's action to remove Petitioner from the United States due to his failure to maintain the conditions of his nonimmigrant status (hereinafter "the deportation case"). The second action was Petitioner's habeas petition for release on bond during the pendency of his deportation proceedings (hereinafter "the bond case"). The case *sub judice* is a habeas action seeking release from detention pending Petitioner's removal from the United States pursuant to a deportation order that became final on November 13, 2001.

Petitioner was born in Gaza in 1957 and moved with his family to Saudi Arabia one year later. After thirteen years there, he moved to Egypt, where he completed high school and received a bachelor's degree. From 1979 to 1981, he worked in the United Arab Emirates ("UAE") on a temporary work visa. In 1981, Petitioner first entered the United States on a Palestinian refugee travel document issued by the Egyptian government. Aside from a brief trip abroad in 1984, Petitioner has remained in the United States since that time. He obtained his doctorate degree in

engineering at the University of South Florida ("USF") in 1994. In addition, he helped found at USF the World and Islam Studies Enterprise ("WISE"), described as "a think-tank ostensibly committed to educating the public about Islamic issues through research, publishing and seminars." *Al Najjar v. Ashcroft,* 257 F.3d 1262, 1272 (11th Cir.2001).

The deportation case against Petitioner commenced on April 19, 1985, when the Immigration and Naturalization Service ("INS") issued an order to show cause under 8 U.S.C. § 1251(a)(9) (1984), alleging that Petitioner had failed to maintain the conditions of his nonimmigrant status by providing untruthful information to the INS about his marriage. The INS later supplemented the order to show cause by charging that Petitioner had not maintained the conditions of his nonimmigrant status under the Immigration and Nationality Act ("INA"). On June 4, 1986, the case against Petitioner was administratively closed after he failed to appear at an administrative hearing. A few weeks later, Petitioner asked the INS to reopen the hearing once he received notice, but he received no response.

A decade later, the INS rescheduled Petitioner's case for a deportation hearing on February 8, 1996. Petitioner's proceedings were consolidated with those of his wife, Fedaa. At the hearing, Petitioner conceded deportability on the ground that he had overstayed his nonimmigrant student visa, but he sought relief from deportation, including asylum, withholding of removal and suspension of· deportation. The INS objected to Petitioner's request for discretionary relief. On May 13, 1997, the immigration judge ("IJ") found Petitioner deportable and denied his applica-

tion for relief. The IJ designated the UAE as the country · of deportation, and Petitioner appealed to the Board of Immigration Appeals ("BIA").

On October 26, 1999, the BIA affirmed the May 1997 deportation order against Petitioner and his wife. Petitioner and his wife then appealed the BIA decision to the Eleventh Circuit United States Court of Appeals. On December 16, 1999, the Eleventh Circuit granted Petitioner and his wife's unopposed motion to stay deportation pending completion of their appeal.

On July 18, 2001, the Eleventh Circuit upheld the deportation orders against Petitioner and his wife. *Al Najjar v. Ashcroft,* 257 F.3d 1262 (11th Cir.2001). The court concluded that Petitioner was ineligible for asylum because he lacked a "credible fear" of persecution in the UAE, that he did not meet the burden for withholding of removal, and that he did not merit discretionary relief on any other claimed ground. On October 25, 2001, the Eleventh Circuit denied Petitioner's motions to reconsider and for rehearing en banc. On November 13, 2001, the Eleventh Circuit also denied Petitioner's motion to stay issuance of the mandate pending a petition for writ of certiorari to the Supreme Court. The mandate in the deportation case issued on the same day.

On November 24, 2001, Petitioner was taken into custody and brought to a federal detention center in Coleman, Florida. (Compl.¶ 31.) Petitioner filed the instant Petition for Habeas Corpus on December 19, 2001.[1]

## II. Parties' Arguments

Petitioner argues that he cannot be detained pursuant to the final order of deportation absent a Government showing that

---

1. Petitioner initially filed a "Supplemental Complaint and Renewed Petition for Habeas Corpus" in Case No. 99–3458–CIV–LENARD. In the prior case, Petitioner challenged his

detention and denial of bond pending issuance of a final deportation order. This Court granted in part Petitioner's habeas petition.

he poses a risk of flight, a danger to the community, or a threat to national security. Essentially, Petitioner contends that the standard applicable to post-final-deportation-order detention is the same as that which governed his detention while he was in deportation proceedings.[2] Because the Government has not demonstrated that Petitioner is a flight risk or a security threat, Petitioner asserts that his current detention violates the INA and his Fifth Amendment rights to substantive and procedural due process. Furthermore, Petitioner asserts that the Government will not be able to deport him in the reasonably foreseeable future, since the UAE will not grant him entry. Petitioner also alleges that he is being held on the basis of his political associations in violation of the First and Fifth Amendments. Alternatively, Petitioner claims that the conditions of his confinement violate the Fifth Amendment.

Based on these allegations, Petitioner seeks: (1) a writ of habeas corpus requir-

ing his immediate release; (2) a judgment declaring his detention to be in violation of the INA and the Constitution; (3) an injunction preventing the Government from detaining him in the future without newly discovered evidence showing that he poses a risk of flight or a threat to the community or national security; (4) alternatively, an order that he be returned to Manatee County jail in Bradenton, Florida, under the conditions applicable to him at the time of his release in December 2000;[3] and (5) attorney's fees and costs.

The Government contends that, since a final deportation order has been entered, the Attorney General has unfettered discretion to detain Petitioner without regard to whether he poses a threat to the community, a national security risk, or a risk of flight.[4]

### III. Section 2241 Habeas Jurisdiction

■ Initially, the Court must determine whether it has jurisdiction to hear Peti-

*Al Najjar v. Reno,* 97 F.Supp.2d 1329 (S.D.Fla.2000). The Government's appeal of this Court's Order was pending when Petitioner's deportation order became final on November 13, 2001. On November 28, 2001, the Eleventh Circuit vacated this Court's Order on the ground that the bond case had been rendered moot by the issuance of a final deportation order. *Al Najjar v. Ashcroft,* 273 F.3d 1330 (11th Cir.2001). Because the mandate from the November 28th decision has not yet issued, this Court currently lacks jurisdiction in that case. See, e.g., *United States v. Cook,* 592 F.2d 877, 880 (5th Cir.1979) (explaining that district court does not reacquire jurisdiction over a case until the appellate court's mandate issues). Upon reviewing the Supplemental Complaint and briefs submitted by the parties in the instant case, the Court determined that Petitioner's current detention presents a new set of facts and issues, distinct from those at issue in the previous case. Consequently, the Court directed the Clerk of Court to open a new case number and file the Supplemental Complaint as the Complaint in the instant action. (D.E.27.)

**2.** According to Petitioner, the Government conceded as much in a public statement issued by the Department of Justice in connection with Petitioner's arrest on November 24, 2001. According to the statement, "The INS regularly detains individuals who have a final order of deportation while it prepares for their removal from the United States if they are a flight risk, a threat to the community or a threat to national security." (Compl.Ex. 6.) The statement also explained, "The Eleventh Circuit's recent affirmation of the final order of removal provided INS with the authority to take Al Najjar into custody and proceed with removing him from the United States. His current detention is not based on classified evidence." (*Id.*)

**3.** Shortly after the IJ found Petitioner deportable in May, 1997, Petitioner was taken to the Manatee County jail and held there until December 15, 2000, when he was released pursuant to an order of the Attorney General.

**4.** When Petitioner initially filed a "Supplemental Complaint" in the previous case, No.

tioner's claims pursuant to the primary federal habeas corpus statute, 28 U.S.C. § 2241. In recent years, Congress has enacted numerous statutory provisions restricting the scope of judicial review in immigration matters. The Supreme Court, however, has clarified that federal courts retain section 2241 jurisdiction to hear an alien's statutory and constitutional challenges with respect to the extent of the Attorney General's authority to detain the alien after entry of a final removal order. *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 2497–98, 150 L.Ed.2d 653 (2001). The *Zadvydas* Court noted, however, that the INA precludes judicial review of decisions "specified ... to be in the discretion of the Attorney General." *Id.* (citing 8 U.S.C. § 1252(a)(2)(B)(ii) (1994 ed., Supp. V)). Thus, while this Court has habeas jurisdiction to hear Petitioner's statutory and constitutional claims regarding the extent of the Attorney General's authority to detain him pending removal, the Court will not consider any challenge to decisions within the discretion of the Attorney General.[5]

## IV. Determination of Applicable Law

Having determined that jurisdiction exists, the Court must determine what law governs the substantive analysis of Petitioner's claims. This task has been simplified by the Eleventh Circuit's previous determination that the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") govern Petitioner's deportation proceedings. *Al Najjar*, 257 F.3d at 1276–77. The remaining question is what statutory provision governs detention pending execution of the final deportation order. Petitioner asserts that pre-IIRIRA law, 8 U.S.C. § 1252(c)(1995), applies. (Compl.¶ 33.) The Government apparently argues that the amended law, 8 U.S.C. § 1231(a)(6) (2001), is appropriate.[6] (Resp.'s 1/23/02 Reply at 4 n. 4.)

99–3458–CIV–LENARD, the Government argued that the Court lacked jurisdiction because the Eleventh Circuit's mandate had not yet issued with respect to its November 28, 2000 decision. (12/21/01 Reply at 1.) As of the date of this Order, the mandate has not yet issued. The instant case, however, presents issues distinct from those of the previous case. See supra note 1.

**5.** Section 306(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–546, provides: "Notwithstanding any other provision of law, no court shall have jurisdiction to review ... (ii) any other decision or action of the Attorney General the authority for which is specified under this title to be in the discretion of the Attorney General, other than the granting of [asylum] relief under section 208(a) [8 U.S.C. § 1158(a) ]." INA § 242(a)(2)(B), 8 U.S.C. § 1252(a)(2)(B). IIRIRA section 306(c) specifies that the amendment made by subsection (a) applies to "all final orders of deportation or removal and motions to reopen filed on or after the date of enactment of this Act [September 30, 1996]." Petitioner's order of deportation became final when the Eleventh Circuit issued its mandate on November 13, 2001. Consequently, IIRIRA's limitation upon judicial review of discretionary decisions applies in this case.

**6.** The Government cites *Zadvydas v. Underdown*, 185 F.3d 279, 286 (5th Cir.1999), *vacated on other grounds*, *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 2498, 150 L.Ed.2d 653 (2001), as a transitional rule case where post-IIRIRA section 1231 was applied. *Zadvydas* was not, however, a transitional case. Rather, the Fifth Circuit noted that Zadvydas's deportation order had become final in 1994, so that he was not "in proceedings" on the effective date of IIRIRA, and thus, the transitional rules did not apply. 185 F.3d at 286–87. Additionally, the parties had agreed that the new permanent rules should apply in Zadvydas's case. *Id.* The Supreme Court applied the post-IIRIRA section 1231 without discussing the choice of law issue. *See* 121 S.Ct. at 2495.

■ The general rule in transitional cases is that none of IIRIRA's amendments applies unless a case meets one of IIRIRA's enumerated exceptions. *Al Najjar*, 257 F.3d at 1276–77. IIRIRA does not specify that the new post-final-removal-order detention provisions, codified at 8 U.S.C. § 1231, apply to transitional aliens. Consequently, the Court finds that the pre-IIRIRA provision, 8 U.S.C. § 1252(c) (1995), governs Petitioner's detention pending execution of the removal order.

## V. Analysis

### A. Statutory Interpretation

With respect to the detention of aliens for whom a final order of deportation has been issued, 8 U.S.C. § 1252 (1995) provides, in relevant part:

(c) Final order of deportation; place of detention

When a final order of deportation under administrative processes is made against any alien, the Attorney General shall have a period of six months from the date of such order, or, if judicial review is had, then from the date of the final order of the court, within which to effect the alien's departure from the United States, during which period, at the Attorney General's discretion, the alien may be detained, released on bond in an amount and containing such conditions as the Attorney General may prescribe, or released on such other conditions as the Attorney General may prescribe. Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or other release during such six-month period upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warrant-

ed by the particular facts and circumstances in the case of any alien to effect such alien's departure from the United States within such six-month period.

8 U.S.C. § 1252(c) (1995).

■ A plain reading of the statutory provision indicates that the Attorney General has six "unhampered" months from the date of the Eleventh Circuit's mandate in the deportation case within which to effectuate Petitioner's departure from the United States. *See Ogorodnikov v. INS*, 995 F.2d 1063, 1993 WL 192766 at *2 (4th Cir.1993) (per curiam) (adopting rationale of Second Circuit and district courts holding that the Attorney General has six "unhampered" months from date of final deportation order within which it may detain an alien); *Balogun v. INS*, 9 F.3d 347, 350–51 (5th Cir.1993) (remanding for determination of whether alien intentionally prevented INS from effecting his deportation, in which case the six-month period should be equitably tolled until alien begins to cooperate); *Dor v. Dist. Dir., INS*, 891 F.2d 997, 1002–03 (2d Cir.1989) (rejecting alien's claim for release after expiration of six-month period where alien had caused delay of deportation by extensive legal maneuvering); *Bartholomeu v. Dist. Dir., INS*, 487 F.Supp. 315, 319–20 (D.Md. 1980); *United States ex rel. Lam Tuk Man v. Esperdy*, 280 F.Supp. 303, 304 (S.D.N.Y.1967); *United States ex rel. Cefalu v. Shaughnessy*, 117 F.Supp. 473, 474 (S.D.N.Y.), *aff'd*, 209 F.2d 959 (2d Cir. 1954) (per curiam).

During the six-month period, the statute authorizes the Attorney General to exercise discretion in deciding whether Petitioner should be detained or released with or without bond. Under IIRIRA, the Court lacks jurisdiction to review the Attorney General's exercise of discretion.[7]

---

7. *See supra* note 5.

Moreover, section 1252(c) allows the Court to review a decision concerning detention, release on bond or other release during the six-month period only "upon a conclusive showing ... that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the facts and circumstances." Petitioner has not made such a showing. Thus, the Court concludes that Petitioner's detention during the six-month period does not violate section 1252(c).

## B. Federal Regulations

The applicable federal regulations also support the conclusion that the Attorney General has the authority to detain Petitioner. 8 C.F.R. § 241.33 applies to deportation of aliens in the United States whose hearings commenced prior to April 1, 1997. The regulation provides:

(a) Execution of an order. Except in the exercise of discretion of the district director, and for such reasons as are set forth in § 212.5(a) of this chapter,[8] once an order of deportation becomes final, an alien shall be taken into custody and the order shall be executed. For the purposes of this part, an order of deportation becomes final and subject to execution upon the date when any of the following occurs:

(1) A grant of voluntary departure expires;

(2) An immigration judge enters an order of deportation without granting voluntary departure or other relief, and the alien respondent waives his or her right to appeal;

(3) The Board of Immigration Appeals enters an order of deportation on appeal, without granting voluntary departure or other relief; or

(4) A Federal district or appellate court affirms an administrative order of deportation in a petition for review or habeas corpus action.

(b) Service of decision. In the case of an order entered by any of the authorities enumerated above, the order shall be executed no sooner than 72 hours after service of the decision, regardless of whether the alien is in Service custody, provided that such period may be waived on the knowing and voluntary request of the alien. Nothing in this paragraph shall be construed, however, to preclude assumption of custody by the Service at the time of issuance of the final order.

8 C.F.R. § 241.33 (2001).

This regulation provides clear authority for Petitioner to be taken into custody immediately upon the Eleventh Circuit's issuance of the mandate in his deportation case.[9] Indeed, the regulation creates a presumption of detention and requires an exercise of discretion by the district director for an alien subject to a final deportation order to avoid detention. *See* 8 C.F.R. § 241.33(a). Accordingly, the current detention of Petitioner is lawful under both the applicable statutory and regulatory provisions.

## C. Constitutional Analysis

The Supreme Court has recently interpreted the post-removal-period detention statute, as amended by IIRIRA, in *Zadvy-*

**8.** Section 212.5(a) provides for the parole of certain aliens, including: (1) aliens with serious medical conditions; (2) pregnant women; (3) juveniles; (4) aliens who will be witnesses in proceedings in the United States; and (5) aliens whose continued detention is not in the public interest as determined by the district director or chief patrol agent. *See* 8 C.F.R.

§ 212.5(a). Petitioner has not alleged that he belongs to any of the groups enumerated in section 212.5(a).

**9.** The mandate issued on November 13, 2001. Petitioner was not taken into custody until November 24, 2001.

das v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). The new statutory regime creates a presumption of detention of all aliens for a 90–day "removal period," which runs from the date of the final removal order. 8 U.S.C. § 1231(a)(2) (1999). After expiration of the 90–day period, the statute provides that certain aliens "may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision."[10] 8 U.S.C. § 1231(a)(6) (1999). In Zadvydas, the Supreme Court held that the Attorney General may not detain a removable alien indefinitely, but rather, only for "a period reasonably necessary to secure removal." 121 S.Ct. at 2504.

To guide lower court determinations of reasonableness, the Supreme Court established a "six-month presumption," providing that an alien's detention is presumed reasonable for six months from the date of entry of a final removal order. Id. at 2504–05. After this six-month period, if an alien provides good reason to believe that there is no "significant likelihood of removal in the reasonably foreseeable future," the government must respond with evidence sufficient to rebut the showing. Id. In what amounts to a sliding scale test, for detention to remain reasonable as the period of post-removal-order confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. Id. Even the six-month presumption "does not mean that every alien not removed must be released after six months." Id. at 2505. To the contrary,

"an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

Although Zadvydas involved the post-IIRIRA statutory regime, the constitutional analysis set forth by the high Court applies equally to Petitioner's case. Due to the complexity involved in judicial review of detention matters, the Zadvydas Court found it "practically necessary to recognize some presumptively reasonable period of detention" ... "in order to limit the occasions when courts will need to make [difficult judgments] ...." Id. at 2504. The Supreme Court's message was unequivocal: "in light of the Constitution's demands," id. at 2498, the Attorney General has unfettered discretion to detain an alien for six months following the issuance of a final removal order. Id. at 2504–05.

■■■ The Zadvydas Court made clear that once a final removal order has issued, the primary purpose of detention is to effectuate an alien's removal from the United States. Id. at 2502. An alien may be detained for six months for the sole purpose of ensuring removal, regardless of whether the alien presents a danger to the community or a risk of flight. Id. Petitioner's deportation order became final on November 13, 2001; thus, his detention is presumed lawful until May 14, 2002.

## D. Conditions of Confinement

As an alternative to release, Petitioner asserts that the conditions of his confinement[11] violate the Fifth Amendment be-

---

**10.** Specifically, the statute allows the continued detention of: aliens who are inadmissible under 8 U.S.C. § 1182, removable under 8 U.S.C. § 1227(a)(1)(C) (nonimmigrant visa violators), 8 U.S.C. § 1227(a)(2) (criminal aliens), or 8 U.S.C. § 1227(a)(4) (aliens deportable on security grounds), or who have been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal. 8 U.S.C.

§ 1231(a)(6). Petitioner has been found deportable for violating the conditions of his nonimmigrant visa. 257 F.3d at 127. Thus, if applicable, section 1231(a)(6) would authorize his continued detention past the 90–day removal period.

**11.** Specifically, Petitioner alleges that he is currently detained in FCC Coleman, a federal prison, in solitary confinement, under 23–

cause they are "excessive in relation to the government's legitimate purposes of preventive detention," (Compl.¶ 51) and that his "confinement under extreme conditions was made without any procedural due process protections in violation of the Fifth Amendment." (*Id.* ¶ 52.) Petitioner cites *Zadvydas,* 121 S.Ct. at 2499, where the INS submitted that the only legitimate government interests in detaining aliens prior to removal are: (1) ensuring that they are available for deportation, and (2) protecting the community and national security. (Pet.'s Mem. in Supp. of Emerg. Mot. at 23.) Petitioner asserts that the conditions of his confinement are excessive in relation to those interests. (*Id.*)

In *Zadvydas,* the Supreme Court held that an alien's *indefinite* detention violated the Constitution. 121 S.Ct. at 2498. Where the civil confinement at issue was not limited, but "potentially permanent," *id.* at 2499, the Court concluded that the Government could not detain an alien more than six months absent a "significant likelihood of removal in the reasonably foreseeable future," *id.* at 2505, or "other special circumstances," *id.* at 2502. The *Zadvydas* Court made no mention of the conditions of confinement during the six-month period.

In *Wong Wing v. United States,* the Supreme Court established that deportation is not intended as a form of punishment. 163 U.S. 228, 16 S.Ct. 977, 41 L.Ed. 140 (1896). The Court concluded that aliens who have been ordered removed are entitled to some substantive due process protection, and held unconstitutional a statute that imposed a year of hard labor upon aliens subject to a final deportation

order. *Id.* at 237–38, 16 S.Ct. 977. Petitioner cites no case law applying *Wong Wing* to facts similar to those he alleges, and the Court has found no authority preventing the Government from exercising its discretion over the conditions of a deportable alien's confinement in the manner Petitioner alleges.

■ The constitutional standards applicable to pre-trial detention are analogous to the post-removal order, pre-deportation context, as both involve non-punitive detention. Absent a showing of intent to punish, a condition or restriction of pre-trial [or pre-deportation] detention is unconstitutional only if it is not "reasonably related to a legitimate goal—if it is arbitrary or purposeless ...." *Bell v. Wolfish,* 441 U.S. 520, 539, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Moreover, "Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility." *Id.*

In addition, the Government's legitimate interests in civil detention are not limited to ensuring that a detainee is available for deportation and protecting the community and national security, as conceded by Petitioner. "The Government also has legitimate interests that stem from its need to manage the facility in which the individual is detained." *Id.* at 540, 99 S.Ct. 1861. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that

hour lockdown, with severe restrictions on his ability to read, have visitors, or make phone calls. (Compl.¶ 44.) Petitioner seeks to be returned to Manatee County Jail in Braden-

ton, Florida, the site of his previous detention, where he was permitted to make phone calls, have contact visits with his family, and to mix with the general population. (Id.¶ 38.)

the detainee would not have experienced had he been released while awaiting trial [or deportation]." *Id.* Courts should ordinarily defer to the expert judgment of government officials in such matters. *Id.* at n. 23.

 Petitioner has not alleged an intent to punish him. Mindful of the Government's legitimate interests in determining the conditions of confinement, the Court finds that Petitioner has not alleged conditions or restraints that are "arbitrary or purposeless" or not "reasonably related" to legitimate government objectives. *See id.* at 539, 99 S.Ct. 1861. While the conditions of Petitioner's previous detention may have been preferable to him, such conditions are not constitutionally required. Accordingly, it is

**ORDERED AND ADJUDGED** that:

1. The Complaint for Declaratory and Injunctive Relief and Petition for Habeas Corpus (D.E.1) and Emergency Motion for Release and Preliminary Injunction (D.E.3), filed December 19, 2001, by Petitioner Mazen al Najjar, are **DENIED.**

2. This case is **CLOSED.**

3. All motions not otherwise ruled upon by separate order are **DENIED AS MOOT.**